[Civ. No. 51533. Second Dist., Div. Five. May 12, 1978.]

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Plaintiff and Respondent, v.
T. M. COSS, Defendant and Appellant.

**COUNSEL**

William Walsh IV, Thomas P. Kestler and Amy Rehm Hinderer for Defendant and Appellant.

Hagenbaugh & Murphy and Larry Klein for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—On this appeal we are asked to determine whether a comprehensive general liability insurance policy issued to a general contractor covers a claim for damages by a home owner against the contractor for the contractor's failure to construct the home in a workmanlike manner. Under the facts of this case, we conclude that it does not.

Plaintiff, St. Paul Fire and Marine Insurance Company (St. Paul) issued to the defendant, T. M. Coss (Coss), a comprehensive general liability insurance policy (policy). Coss, a licensed building contractor in the State of California, entered into a contract with Kenneth R. Runyon and Bettye J. Runyon (Runyons) which provided that Coss would construct for the Runyons on their property and pursuant to their plans and specifications a dwelling and garage. The agreement provided that

Coss would construct and complete the Runyon residence in a "good, workmanlike and substantial manner."

Coss commenced construction and when it was approximately 85 percent completed, a dispute arose between Coss and the Runyons in reference to the quality of the work being performed. Coss discontinued the work, and the Runyons sued for damages in the superior court.[1] A judgment has now been entered in said case in favor of the Runyons for approximately $60,000. At the time Coss discontinued the work, neither the dwelling nor the garage were in a condition so that they could be used for their intended purposes. No completion or performance bond was obtained with regard to the contract between Coss and the Runyons. Coss demanded that St. Paul defend the action, claiming coverage under his comprehensive policy issued by them. St. Paul, without admitting the coverage, defended Coss at the outset but also brought its action for declaratory relief seeking a determination that it had neither the duty to defend nor the obligation to indemnify Coss with respect to the Runyon action. The case was submitted on a stipulation of facts, written briefs, and oral arguments, and judgment was entered in favor of St. Paul, holding that it had no further obligation to defend or indemnify Coss. This appeal followed.

The policy involved was first issued by St. Paul to Coss on or about April 5, 1971, and was renewed annually thereafter to April 5, 1976. The construction contract entered into between Coss and the Runyons was made on or about April 2, 1973.

The comprehensive general liability insurance section of the St. Paul policy provides as follows:

"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

"Coverage A. bodily injury or

"Coverage B. property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such

---

[1]The first cause of action is for breach of contract and the third for negligence. The second cause of action for fraud is not involved with the issues on appeal. The damages sought by the Runyons are listed later in the opinion.

bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, . . ."

Under the definition section of the policy, property damage is defined as follows: " 'Property Damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

In the Runyons' complaint there are 36 particulars as to alleged defect in the work done by Coss. These defects fall into two classifications: the first can be considered defective materials allegedly used by Coss in construction of the dwelling, and the second can be considered defective work on the part of Coss. The damages sought by the Runyons are the costs incurred by them in engaging architects and contractors to correct the defective work of Coss, for loss of use of the house, for having to rent a substitute residence, and for attorney's fees incurred in prosecuting their action against Coss.

The policy defines property damage to mean *physical injury to* or *destruction of* tangible property. St. Paul argues that defective materials and workmanship are not physical injury to tangible property. Coss, on the other hand, contends the combination of the two has caused injury to the residence, which is tangible property.

Although a tennis racket is not a home, this issue was raised in *Hamilton Die Cast, Inc.* v. *United States F. & G. Co.* (7th Cir. 1975) 508 F.2d 417, where a customer sued the insured for an alleged failure to comply with a contract for supplying tennis racket frames. The insured had withdrawn the frames from the market because of a defective design. Plaintiff contended that there was "property damage" within the terms of a general comprehensive liability insurance policy because the finished product, the tennis rackets, were damaged by reason of the incorporation of the allegedly defective part, the frame. The court rejected this contention and stated: "We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy. For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires

purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not been 'injury to or destruction of tangible property' [within the coverage provisions]." (*Id.,* at pp. 419-420.) In our present case, the defective materials and workmanship concededly produced an inferior home, just as the poorly designed frame produced an imperfect tennis racket. *Hamilton Die Cast* concludes that poor workmanship on the delivered product is not "property damage" within the terms of the general comprehensive liability policy, and we agree.

Furthermore, the exclusions in the policy, clearly and unambiguously stated, eliminate coverage for the type of damages awarded to the Runyons and now sought by Coss from St. Paul. Under the heading "Exclusions" are found the following pertinent provisions: "This insurance does not apply: . . . (k) to property damage to premises alienated by the Named Insured arising out of such premises or any part thereof; (1) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured . . .; (n) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

An endorsement to the policy entitled "Broad Form Property Damage" which has the effect of replacing exclusions (j) (not listed above) and (n), provides as follows: "This insurance does not apply . . .

"(w) to property damage . . . (2) except with respect to liability under a written sidetrack agreement or the use of elevators to . . . (d) that particular part of any property, not on premises owned by or rented to the Insured. (i) upon which operations are being performed by or on behalf of the Insured at the time of the property damage arising out of such operations, or (ii) out of which any property damage arises, or (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the Insured; (x) with respect to the completed operations hazard (if the insurance otherwise applies to property damage included within such hazard, to property damage to work performed by or on behalf of the Named

Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."[2]

▮ In *Rafeiro* v. *American Employers' Ins. Co.,* 5 Cal.App.3d 799 [85 Cal.Rptr. 701], there was a very similar factual situation. Plaintiff had entered into a contract with Wentz Construction Company which was to construct for plaintiff two separate apartment buildings. In the lawsuit against Wentz, plaintiff contended that Wentz had either used unsuitable materials or performed unworkmanlike construction. Judgment was awarded to plaintiff for $13,400, and plaintiff then brought an action against American Employers Insurance Co., insurer of Wentz, to recover the amount of the judgment. The insurance policy in question was, to all intents and purposes, the same as the St. Paul policy. The exclusions considered by the court were identical to exclusions (w)(2)(d)(iii) above. The court's opinion discusses the exclusions in detail, and then concludes on page 808: "It appears from the above provisions that the insurance furnished, unlike malpractice insurance, was not intended to indemnify the contractor (and through him the owner) for direct damages resulting because the contractor furnished defective materials or workmanship. (Cf. contractor's bond as contemplated by Code Civ. Proc., § 1185.1, subds. (c) and (d); and Civ. Code, §§ 3235 and 3236, as effective January 1, 1971. . . .)"[3] The same reasoning is apposite to our present case.

▮ Coss next contends that damages sought and recovered by the Runyons were for a breach of warranty of fitness for the construction work to be performed and delivered. He states that exclusion (a) of the policy, which precedes exclusions (k), (*l*) and (n), *supra,* can be

---

[2]The trial court ruled that exclusions (k), (*l*) and (n), *supra,* deny coverage to Coss and refused to consider (w) and (x) because, in its mind, they were hidden in the middle of the policy. We agree with the trial court that the exclusions relied on defeat Coss' claim. We do not agree that the Endorsement containing exclusions (w) and (x) was hidden in the policy. It clearly appears as part of the policy, and where there is any conflict in meaning between an endorsement and the body of the policy, the endorsement controls. (*Southwestern Funding Corp.* v. *Motors Ins. Corp.,* 59 Cal.2d 91, 94 [28 Cal.Rptr. 161, 278 P.2d 361].)

[3]The opinion in *Rafeiro* concluded [at page 810] by stating: "The case is governed by *Volf* v. *Ocean Acc. & Guar. Corp.* (1958) 50 Cal.2d 373 [325 P.2d 987], and *Liberty Bldg. Co.* v. *Royal Indem. Co.* (1960) 177 Cal.App.2d 583 [2 Cal.Rptr. 329]. (See also *Kendall Plumbing, Inc.* v. *St. Paul Mercury Ins. Co.* (1962) 189 Kans. 528, 530-532 [370 P.2d 396, 397-399]; and Macaulay, *Justice Traynor and the Law of Contracts* (1961) 13 Stan.L.Rev. 812, 824-827.) In each of those cases there was no showing of damage aside from that to the defective property or work which was expressly excluded in the insurance policy. (See 50 Cal.2d at pp. 375-376; 177 Cal.App.2d at pp. 587-588; and *Karpe* v. *Great American Indem. Co., supra,* 190 Cal.App.2d 226, 234 [11 Cal.Rptr. 908].)"

interpreted to give him coverage under these circumstances. Exclusion (a) provides: "This insurance does not apply: (a) to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner. . . ."

Coss admits that exclusions (k), (*l*), (n), (w) and (x) would preclude coverage if there was no exclusion (a). However, he argues that exclusion (a) contradicts them by granting coverage for warranty of fitness, and this creates an ambiguity in the policy that brings into play the rule that any ambiguity or uncertainty in an insurance policy must be resolved against the insurer and in favor of the insured. (See *Harris* v. *Glens Falls Ins. Co.,* 6 Cal.3d 699-701 [100 Cal.Rptr. 133, 493 P.2d 861]; *State Farm Mut. Auto. Ins. Co.* v. *Elkins,* 52 Cal.App.3d 534, 538 [125 Cal.Rptr. 139]; *Cimarron Insurance Co.* v. *Travelers Insurance Co.,* 224 Ore. 57 [355 P.2d 742, 746-747.) He further argues that *Rafeiro* v. *American Employers' Ins. Co., supra,* 5 Cal.App.3d 799, is not applicable because exclusion (a) was not considered by the court. At the time both parties filed their briefs they agreed that no California case had considered the effect of exclusion (a) in a similar situation. A recent California case, however, has discussed it: In *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.,* 76 Cal.App.3d 272 [142 Cal.Rptr. 681], two cases of similar nature were consolidated. Plaintiffs purchased or leased from a car dealer used cars represented to be free of mechanical defects, etc. It turned out that the cars were defective. One plaintiff sought damages for the downpayment and the monthly payments on the purchase price and costs for repairs; the other sought damages for negligent representations. The car dealer had an insurance policy identical to the St. Paul policy here in question and the dealer demanded that the insurance company defend the lawsuits. The argument was that exclusion (a) (same as the St. Paul exclusion (a)) extended the policy to cover damages resulting from a breach of an implied warranty of fitness or quality. The court disagreed, saying at page 281: "We first observe the obvious: the exclusion has reference to the hazards insured against in the coverage paragraph; thus, the exclusion's warranty language must be interpreted to relate only to personal injury or property damage actions resulting from breach of warranty."

The same issue was raised in *Biebel Bros., Inc.* v. *United States Fidelity & G. Co.* (8th Cir. 1975) 522 F.2d 1207, but the court handled it somewhat

differently. A contractor sued the insurance company under a general liability insurance policy to recover costs for repairing his defective workmanship on a building he erected. The court found the exclusions dispositive of the issue and denied the contractor recovery. As to exclusion (a), the court stated on page 1212: "Appellee seeks to avoid the effect of the clear language of exclusions (*l*) and (m) by calling our attention to exclusion (a) [identical to St. Paul] ... Appellee notes the exception and argues that it would be unnecessary if the legal obligation of the insured were not based upon a breach of warranty. It fails to recognize that this language is limited to exclusion (a) and has no application whatsoever to exclusions (*l*) or (m) or the others here under scrutiny."

As initially noted in this opinion, we concluded that the St. Paul policy did not intend to, nor did it, extend coverage to include reimbursement (in some form or another) to a builder for expenditures required to correct his own defective product made so by his poor workmanship and use of substandard materials. The California and Federal cases cited are in accord that the exclusion cannot act as an additional grant or extension of coverage. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. (*Haugan* v. *Home Indemnity Company* (1972) 86 S.D. 406 [197 N.W.2d 18, 22].[4] For the reasons stated, exclusion (a) is not in conflict with the other exclusions; therefore, we do not find the ambiguity urged by Coss. An insurance policy is a contract, and when the terms are plain and unambiguous, it is the duty of the court to hold the parties to such contract. The courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the insurance company which it has not assumed. (*Farmers Ins. Exch.* v. *Harmon*, 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].)

Finally, Coss makes the often encountered argument that an insurance policy is determined by the insured's reasonable expectations of coverage and all doubts must be resolved against the insurer. (*Gyler* v. *Mission Ins.*

---

[4]*Fontainebleau Hotel Corp.* v. *United Filigree Corp.* (Fla.App. 1974) 298 So.2d 455, cited by Coss, reached a decision opposite to *Haugan*. *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co., supra,* 76 Cal.App.3d 272, is consistent with *Haugan*. We also agree *Haugan* is the better rule, when applied to the facts of our case. The *Fontainebleau* policy did not have an endorsement that clearly resolved the issue, as we do have here.

*Co.,* 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219]; *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) Coss states that, as a general contractor, most of his activity is conducted on other persons' premises; therefore, he wanted broad liability coverage and he believed a reading of the policy covered his liability for an unworkmanlike construction. We cannot agree that the policy and its endorsements, when properly read, could lead Coss to believe that he had, in effect, products liability coverage. The response to this argument was recently stated in *Fresno Economy Import Used Cars, Inc., supra,* 76 Cal.App.3d 272, where the court stated at page 285: "Appellant did not contract for and did not receive products liability coverage. In fact, the policy expressly excluded this coverage."

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.