827 F.2d 574
 GULF INSURANCE CO., Plaintiff/Counter-defendant/Appellee,
v.
The L.A. EFFECTS GROUP, INC., Larry Benson, Suzanne Benson,
Lisa Benson and Steven Benson,
Defendants/Counter-claimants/Appellants.
 No. 86-6448.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1987.
Decided Sept. 8, 1987.
As Modified on Denial of Rehearing Dec. 8, 1987.
 
 Brian C. Lysaght, Santa Monica, Cal., for defendants/counter-claimants/appellants.
 Paul D. Loreto, Orange, Cal., for plaintiff/counter-defendant/appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ALARCON and O'SCANNLAIN, Circuit Judges, and REED,* District Judge.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 Production of the movie Aliens forms the backdrop for this dispute over insurance coverage. The appellee is an insurance company ("Gulf") that sought a declaration that it was not obligated to defend or indemnify its insured in lawsuits involving the insured and a major Hollywood film studio. The district court granted Gulf's motion for summary judgment, and the insured has appealed. For the reasons set forth below, we affirm.
 
 FACTS
 
 2
 The L.A. Effects Group, Inc. ("LAE") (including the Bensons, principals in LAE) creates visual special effects for use in feature length movies. In May 1985 Twentieth Century Fox Distributing Corporation ("Fox") and LAE entered into a contract in which LAE was to produce certain visual special effects for use in a movie tentatively entitled Alien II. Pursuant to the terms of that agreement, Fox advanced funds for LAE to obtain necessary models, materials, and equipment, as well as the exclusive services of persons whose talents Fox deemed essential for the success of the film.
 
 
 3
 During the production of Aliens (under which title the movie was later released), a dispute arose over LAE's performance and Fox's advancement of money. As a result, LAE refused to continue work on the film unless and until Fox agreed to renegotiate its contract with LAE. Fox declined, completing the project on its own.
 
 
 4
 In February 1986 Fox sued LAE in California state court,[1] asserting various legal and equitable claims against LAE stemming from the above dispute. LAE responded in April 1986 by filing a copyright infringement action against Fox in federal district court.[2] Fox counterclaimed against LAE in that action.
 
 
 5
 As the insured under a comprehensive general liability insurance policy issued by Gulf, LAE tendered the defense of the claims asserted against it in the above lawsuits to Gulf. Gulf declined the defense, however, and in May 1986 filed the instant diversity action under 28 U.S.C. Sec. 2201, seeking a declaration that it had no obligation under the terms of the insurance contract to defend or indemnify LAE in the above actions. The matter was submitted to the district court on cross-motions for summary judgment,[3] and on September 15, 1986, the court ruled in favor of Gulf and against LAE. It is from that judgment that LAE has appealed.
 
 STANDARD OF REVIEW
 
 6
 We review de novo a district court's decision to grant summary judgment. Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1288 (9th Cir.1987). As it is undisputed that California law governs this diversity action, we apply California law here.
 
 ANALYSIS
 
 7
 Under California law, a complaint need only "allege facts which give rise to potential liability under the policy in order to trigger the insurer's duty to defend." Previews, Inc. v. California Union Ins. Co., 640 F.2d 1026, 1027 (9th Cir.1981) (citing Gray v. Zurich Ins. Co., 65 Cal.2d 263, 276-77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) and St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co., 603 F.2d 780, 786 (9th Cir.1979)) (emphasis in original). Thus, the claimant need only assert a cause of action against the insured that "potentially seeks damages within the coverage of the policy" to trigger the insurer's obligation to defend. Gray, 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168 (emphasis in original).
 
 
 8
 LAE argues that Fox's complaint and counterclaims in the state and federal actions alleged facts giving rise to potential liability under the terms of the policy. LAE also argues that the policy in question is unintelligible, and that such ambiguity should negate certain exclusionary clauses in the policy that might otherwise preclude coverage. We address these arguments in turn.
 
 
 9
 * The insurance policy issued by Gulf to LAE describes the scope of coverage provided to the insured as follows:
 
 
 10
 The Company [Gulf] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury or ... property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent....
 
 
 11
 (emphasis added).
 
 
 12
 "Occurrence" is defined in the policy as follows:
 
 
 13
 "[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
 
 
 14
 "Property damage" is in turn defined in the policy as follows:"[P]roperty damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 15
 (emphasis added).
 
 
 16
 Without deciding whether any event alleged by Fox could be considered an "accident" within the meaning of "occurrence" set out above, it is clear that no "occurrence" invoking coverage under the policy can be made out unless Fox's complaint or counterclaims allege potential damage resulting from physical injury to tangible property.[4]
 
 
 17
 LAE argues that Fox's allegation that the visual special effects sequences created by LAE were inexpertly produced and either excised from or detrimentally incorporated into the final cut of Aliens states a claim for physical injury to the film. In other words, because LAE allegedly did not perform as warranted and failed to complete its contractual obligation to Fox, Aliens was inferior to what it could or should have been, i.e., it was a physically damaged product.
 
 
 18
 An uncompleted contractual obligation by an insured party may not constitute "property damage." See St. Paul Fire & Marine Ins. Co. v. Coss, 80 Cal.App.3d 888, 892-93, 145 Cal.Rptr. 836 (1978). In that case, the insured sought defense from its insurer on the grounds that an 85% completed building contract constituted property damage under the provisions of the policy. Id. at 891, 145 Cal.Rptr. 836. While conceding that the insured's non-completion of his contractual obligation produced an inferior home, the court held that such harm was not "property damage" within the terms of the general liability insurance policy. Id. at 893, 145 Cal.Rptr. 836.
 
 
 19
 Inadequate performance of an insured's contractual obligation, however, may result in a finding of "property damage." See Sears, Roebuck & Co., 603 F.2d at 780. In that case, the insured installed defective urethane on a roof. In holding that this act caused physical damage to property, the court noted that the entire roof had to be replaced to correct the insured's defective performance. Id. at 786.
 
 
 20
 The situation presented in the instant appeal parallels that of Coss much more closely than that of Sears, Roebuck. Moreover, Fox could (and to a great extent, apparently did) correct LAE's allegedly defective performance either by excising the inadequate sections from Aliens and hiring another visual special effects contractor or by ameliorating the inadequate sections through its editing process. Thus, the harms alleged by the claimant were largely limited to the insured's nonperformance of his contractual duty. Since Fox's alleged injury resulted solely from LAE's non-performance of its contractual obligations, LAE must bear sole responsibility for defending itself.
 
 
 21
 Property damage must also be tangible to trigger the insurer's duty to defend. Giddings v. Industrial Indem. Co., 112 Cal.App.3d 213, 219, 169 Cal.Rptr. 278 (1980).
 
 
 22
 [S]trictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy.
 
 
 23
 Id. Accord Lassen Canyon Nursery, Inc. v. Royal Ins. Co. of America, 720 F.2d 1016, 1018 (9th Cir.1983) (construing California law). Here, Fox seeks recovery of its expectation interest, the money it advanced LAE, plus exemplary damages. Fox does not allege that the film was physically damaged, but rather that LAE failed to perform its contractual obligations. No overall diminution in economic value to Aliens is alleged, nor does Fox argue that box office receipts were diminished as a result of LAE's alleged breach. Indeed, by excising and editing the inexpertly filmed sections, Fox may very well have increased the economic value of the movie.
 
 
 24
 Nevertheless, LAE argues that tangible property was in fact involved, contending that the artistic value of the film constitutes a form of tangible property separate and distinct from the film's lengthy strip of celluloid and the reels on which it is spooled.
 
 
 25
 As the court noted in Giddings, supra, "Understood in its plain and ordinary sense, 'tangible property' means 'property (as real estate) having physical substance apparent to the senses' [citation omitted]." 112 Cal.App.3d at 219, 169 Cal.Rptr. 278. Here, nothing in Fox's complaint or counterclaims against LAE alleges damage to or destruction of property, tangible or otherwise. No inference is made anywhere that "artistic value" is tantamount to "tangible property," or that the film's artistic value has physical substance apparent to the sense. Unlike the situation presented in Centennial Ins. Co. v. Applied Health Care Sys., Inc., 710 F.2d 1288 (7th Cir.1983) (construing California law), in which damages were sought for the defendant's negligent loss of the plaintiff's computer files, there is no objective means available to quantify in substantive economic terms any diminution in the artistic value of Aliens. See Giddings, 112 Cal.App.3d at 219-20, 169 Cal.Rptr. 278. Accordingly, we cannot agree with LAE that the artistic value of a movie is tangible property within the meaning and intent of the insurance policy.
 
 II
 
 26
 LAE rests its final argument on the supposed ambiguity of the language of the insurance policy. It correctly argues that, under California law, ambijuities must be resolved in favor of the insured when determining a duty to defend. Gray, 65 Cal.2d at 267. However, even if the alleged ambiguities of contractual coverage are resolved in the manner most favorable to the appellant, it is clear that the coverage extends only to liability for personal injury or damage to tangible property. As we have held that the damage at issue here is to neither, further discussion of the ambiguities is moot.
 
 
 27
 AFFIRMED.
 
 
 
 *
 Honorable Edward C. Reed, Jr., United States District Judge, District of Nevada, sitting by designation
 
 
 [1]
 Twentieth Century Fox Distrib. Corp. v. The L.A. Effects Group, Inc., No. C586132 (Cal.Super.Ct. Feb. 5, 1986). By agreement of the parties this action was dismissed on March 30, 1987, pursuant to Cal.Civ.Code Sec. 581
 
 
 [2]
 The L.A. Effects Group, Inc. v. Twentieth Century Fox Distrib. Corp., No. 86-2328-LEW (C.D.Cal. Apr. 11, 1986). Fox prevailed and LAE's appeal to this court was dismissed pursuant to Fed.R.App.P. 42(b). No. 86-6100 (9th Cir. Mar. 31, 1987)
 
 
 [3]
 LAE's motion was for partial summary judgment on the first of four counterclaims asserted by it against Gulf
 
 
 [4]
 LAE does not argue that the "loss of use" clause quoted above applies to this situation