Filed 3/30/15  Luna v. Praetorian Ins. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALBERTO SANCHEZ LUNA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PRAETORIAN INSURANCE COMPANY, <br><br> Defendant and Respondent. | H040179 <br> (Santa Clara County <br> Super. Ct. No. 1-12-CV236311) |

In this appeal Alberto Sanchez Luna seeks review of an order sustaining a demurrer without leave to amend in his action for contract-based claims against respondent Praetorian Insurance Company and others.  Luna contends that the court erroneously found no duty to defend him against a third-party action, because the facts alleged in that action created a potential for coverage under his commercial liability policy with Praetorian.  We disagree and therefore must affirm the judgment of dismissal.

*Background*

Luna purchased the policy for his business, Alberto's Auto Sales (Alberto's), with a coverage period of December 1, 2009-December 1, 2010.  Among its terms was the provision at issue, contained in the "TRUTH IN LENDING ERRORS AND OMISSIONS COVERAGE."  In paragraph A(1) of this endorsement Praetorian promised to pay up to $300,000 for "sums the 'insured' legally must pay as damages solely by operation of Section 130, Civil Liability, of Title 1 (Truth in Lending Act) of the

Consumer Credit Protection Act (Public Law 90-321-82 Stat. 146 et seq. and as amended) because of error or omission in failing to comply with the Act shown above. Such act or omissions must occur during the policy period." Paragraph A(2) acknowledged the insurer's "right and duty to defend any suit asking for damages because of such error or omission. However, we have no duty to defend suits for errors or omissions not covered by this policy." The provision specifically excluded from coverage "any obligation for which the 'insured' may be held liable due to any dishonest, fraudulent, criminal or intentional act or acts committed by you, your partners, officers, employees or your agents, or any party in interest acting alone or in collusion with others." It also excluded "any obligation for which the 'insured' may be held liable under Section 112, Criminal Liability, of Title 1 (Truth in Lending Act) of the Consumer Credit Protection Act (Public Law 90-321-82 Stat. 146 et seq. and as amended.)"

On March 11, 2011, Stella Teixeira filed suit against Luna and Alberto's for, in essence, misrepresenting that the used car she was shown was in "great shape," increasing the price of the car on the written sales contract by $2,000 over the advertised price, failing to disclose a $2,000 interest charge, and overcharging her for vehicle registration fees. After buying the car in February 2010 she learned that it had frame damage and that it had twice failed a smog test. Teixeira had to spend almost $2,000 in repairs to the vehicle. When she complained, Luna offered to forgive the first month's payment; but when she skipped that payment, he repossessed the car, along with her purse inside, which contained $500. Although the purse was returned, the money was not.

Teixeira's complaint alleged breach of contract, negligent misrepresentation, violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.), violation of the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, § 2981 et seq.), unfair business practices (Bus. & Prof. Code, § 17200 et seq.) and untrue, false, and/or misleading advertising (Bus. & Prof. Code, § 17500 et seq.). She sought damages and

2

both injunctive and declaratory relief against Luna, Alberto's, and the holder of the sales contract. She did not, however, assert any claims under the federal Truth in Lending Act (TILA or Act), 15 U.S.C. 1601 et seq.[1]

Luna tendered the Teixeira action to Praetorian on April 14, 2011, through South Valley Claims, Inc. (South Valley). South Valley denied the claim on behalf of Praetorian, because Teixeira's allegations "do not constitute either an error or [an] omission of Section 130, Civil Liability, of Title 1 of the Consumer Protection Act." Throughout the correspondence over the ensuing five months Praetorian maintained that it had no duty to defend because coverage had not been triggered. According to his complaint, Luna paid for his own defense and apparently settled with Teixeira.

Luna brought the instant action on November 19, 2012, naming Praetorian, South Valley, Budget Plus Insurance Agency, and DMI Insurance Services, which Luna believed owned Budget Plus and South Valley. In his first amended complaint, filed after defendants demurred, he alleged breach of contract for failing to investigate and defend him against the Teixeira action; breach of the covenant of good faith and fair dealing; tortious interference with contract, against all defendants except Praetorian; "unfair, unlawful and fraudulent" business practices in violation of Business and Professions Code section 17200 for unreasonably denying coverage and a defense; breach of fiduciary duty; and negligence. He sought declaratory relief, compensatory and punitive

---

[1] The express purpose of the Truth In Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." (15 U.S.C. § 1601, subd. (a).) "Subject to certain exceptions, TILA does not 'annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.' (15 U.S.C. § 1610(a)(1).) Thus, the existence of TILA does not necessarily preempt plaintiffs' state law claims." (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 244.)

damages, an accounting and restitution, and a permanent injunction covering future policies issued by the defendants.

Defendants demurred to the first amended complaint, contending that none of the causes of action could succeed because the language of the TILA endorsement provided no potential coverage and thus no duty to defend against Teixeira's action. The superior court agreed, finding the TILA endorsement to be unambiguous in extending "only to damages awarded solely by operation of Section 130 because of an error or omission in failing to comply with TILA." Teixeira had not claimed damages under this section or alleged any error or omission in failing to comply with the Act. Accordingly, the court found no actual coverage under the TILA endorsement.

The court nonetheless recognized the parties' dispute over whether a potential for coverage existed. Luna had insisted that the *facts* alleged by Teixeira gave rise to a potential for coverage and thus created a duty to defend. The court, however, distinguishing *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287 (*Montrose*) and *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, noted that the TILA endorsement was triggered not by particular facts or conduct, but by a particular statutory claim—that is, a TILA claim for damages. Without a potential for coverage, the court concluded, defendants could not be liable for failing to defend Luna in the underlying action. Consequently, the court sustained the demurrer and further found that "leave to amend would be futile." From the ensuing judgment of dismissal on July 3, 2013, Luna brought this timely appeal.

*Discussion*

Because this appeal arises from a judgment following the sustaining of a demurrer, settled rules apply to this court's review. A demurrer is properly sustained when the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) On appeal from the judgment of dismissal, this court examines the complaint de novo to determine whether it alleges facts sufficient to

4

constitute a cause of action.  Like the trial court, we assume the truth of all properly pleaded factual allegations, " 'but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters [that] may be judicially noticed.' *(Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

On appeal, Luna challenges the judgment only as to the claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief, and only with respect to Praetorian.  He contends that he should have been afforded a defense to Teixeira's complaint under the TILA endorsement in his policy, based on the language of the endorsement and the allegations of the third-party complaint.

The duty to defend, of course, is broader than the duty to indemnify; the insurer owes the insured a defense against a suit that "*potentially* seeks damages within the coverage of the policy." (*Gray v. Zurich Insurance Co.*, *supra*, 65 Cal.2d at p. 276; *Montrose*, *supra*, 6 Cal.4th at p. 295; see also *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [duty to defend may exist even if no damages ultimately are awarded in the underlying action].)  In determining the duty to defend the court "compar[es] the allegations of the complaint with the terms of the policy.  Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." (*Horace Mann Ins. Co. v. Barbara B.*, *supra*, at p. 1081; *Montrose*, *supra*, at p. 295.)

Luna begins his analysis with an examination of the TILA, selectively extracting text from section 1640 of the Act.  On the premise that a violation of a state law *consistent with* the TILA is by definition a TILA violation, he notes that Teixeira's complaint referred to Regulation Z disclosures, which are part of the regulations

5

implementing the TILA.[2]  Compliance with Regulation Z is among the requirements of Civil Code sections 2981 and 2982 (part of the Rees-Levering Motor Vehicle Sales and Finance Act). Because Teixeira's contract had to comply with these disclosures,[3] and because the law requiring them is "consistent with" the TILA, Luna concludes that a violation of Civil Code section 2981 et seq. necessarily violates the TILA, specifically section 130, and in this case therefore triggered Praetorian's coverage obligation.  In other words, Luna reasons, "Statutes enable regulations.  TILA enables Regulation Z.  An alleged violation of Regulation Z is a violation of TILA. California law incorporates Regulation Z and is so consistent with TILA. Thus, an alleged violation of Regulation Z under California law violates Section 130. . . ."

Luna's leaps of logic do not advance his position. That a California law on lending disclosures is consistent with the TILA does not mean that an *allegation* that the state law

---

[2]  As stated in the Code of Federal Regulations, the purpose of Regulation Z "is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.  The regulation also includes substantive protections.  It gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes. . . . " (12 C.F.R. §  1026.1(b).)  In California, Civil Code section 2981 refers to " 'Regulation Z' " as "a rule, regulation or interpretation promulgated by the Board of Governors of the Federal Reserve System ("Board" ) under the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and an interpretation or approval issued by an official or employee of the Federal Reserve System duly authorized by the board under the Truth in Lending Act, as amended, to issue the interpretations or approvals."  (Civ. Code §2981, subd. (m).)

[3]  Every conditional sale contract subject to the Rees-Levering Motor Vehicle Sales and Finance Act "shall contain the disclosures required by Regulation Z, whether or not Regulation Z applies to the transaction."  (Civ. Code, § 2982.)  Additional disclosures required under this state legislation are listed in Civil Code section 2982.

In Teixeira's fourth cause of action for violation of the Rees-Levering Motor Vehicle Sale and Finance Act she cited Civil Code section 2982 and alleged that Luna had failed to provide those disclosures in violation of this legislation, and specifically Civil Code sections 2981.9, 2982, 2984.

was violated is an allegation of a TILA violation. The lower court correctly noted that Luna had conceded that Teixeira had not asserted a TILA cause of action. The action brought by Teixeira cannot reasonably be viewed as a claim under the TILA. Luna's attempt to bend Teixeira's seven causes of action into such a claim is unavailing.

Luna points out, however, that the endorsement does not specify that there must be a TILA "cause of action" in order to trigger coverage. He asserts that the court failed to construe the TILA endorsement broadly and as an objectively reasonable layperson would have. Had the court given the proper "significance" to the words "error or omission," Luna argues, it would have recognized that coverage exists "when federal law expressly incorporates consistent state law, and state law incorporates federal law, according to the reasonable expectation of the ordinary layperson given the activity to which the policy relates."

Again Luna's argument is not logically sound, nor is it even consistent with either the policy language or the law. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code § 1638.) "To yield their meaning, the provisions of a policy must be considered in their full context. [Citations.] Where it is clear, the language must be read accordingly . . . and, *if it remains problematic*, in the sense that satisfies the insured's objectively reasonable expectations." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 45, italics added.) Accordingly, the policy provisions must be "interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.' ([Civ. Code] § 1644) . . . Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [as in any contract, if the language of an insurance policy "is clear and explicit, it governs"]; see also *St. Paul Fire & Marine Ins. Co. v. Coss* (1978)

7

80 Cal.App.3d 888, 896 ["An insurance policy is a contract, and when the terms are plain and unambiguous, it is the duty of the court to hold the parties to such contract"].)

"A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18-19.) "The courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the insurance company which it has not assumed." (*St. Paul Fire & Marine Ins. Co. v. Coss*, *supra*, 80 Cal.App.3d at p. 896.)

We do not find ambiguity in the provision at issue here. Praetorian promised to cover Luna for damages he incurred for his "error or omission in failing to comply with" the TILA. Contrary to Luna's assertion that no cause of action was required for Praetorian's duty to defend him, the endorsement required Praetorian to defend Luna in the event that he was *sued* for violating a particular law, which was identified by its name and code section: "We have the right and duty to defend any *suit asking for damages because of such error or omission.*" (Italics added.)

The policy thus limited the insurer's coverage and defense obligation in third-party lawsuits to the damages recoverable by the third party as a result of the insured's failure to comply with section 130 of the Act. That it did not include the word "federal" did not make the provision ambiguous. Nor did the fact that it referred to "error or omission" mean that *any* error or omission that could conceivably "support" a TILA cause of action must be covered, even if none is asserted. Reading the policy provision as a whole and in context, we cannot simply excise the restriction to damages "solely by operation of Section 130 . . . ." in order to engraft TILA liability onto a lawsuit that does not seek those damages.

Luna maintains, however, that notwithstanding the causes of action denominated in Teixeira's complaint, the *facts* she alleged were sufficient to constitute a TILA claim, thereby giving rise to a *potential* for coverage and hence a duty to defend.  Relying on *Montrose*, *supra*, 6 Cal.4th 287 and subsequent state and federal decisions, Luna maintains that "[i]t is the alleged conduct ('error or omission'), not a 'cause of action,' that triggers Praetorian's defense obligation under the endorsement."  *Montrose* does not help him, however.  There the policy at issue was applicable to the insured's conduct--namely, the contamination of the environment arising from the manufacture of DDT, a hazardous waste.[4]  The insurers did have a duty to defend Montrose even though the third-party lawsuit did not specify whether Montrose's conduct was intentional or negligent, a question not resolved by the extrinsic evidence.

By contrast, the policy provision under which Luna sought a defense clearly provided specific, limited coverage for TILA claims seeking damages under section 130 and a duty to defend "any suit asking for damages because of *such error or omission*." (Italics added.)  It did not offer broad coverage for conduct violating state statutes or common law disclosure requirements regarding automobile financing.

Luna insists, however, that a potential for coverage existed because Teixeira could have amended her complaint to assert a TILA claim.  It is true that the duty to defend may exist even where "the precise causes of action [pleaded] by the third-party complaint" fall outside policy coverage, if "under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability."

---

[4]  The insurers in *Montrose* had promised to defend the insured against " 'any suit . . . seeking damages on account of bodily injury or property damage,' " and to indemnify Montrose "for 'bodily injury or property damage . . . caused by an occurrence.'  'Property damage' was defined as 'injury to or destruction of tangible property which results during the policy period.'  'Occurrence' was defined as 'an accident, including continuous or repeated exposure to conditions which results in . . . property damage neither expected nor intended from the standpoint of the insured. . . .' " (*Montrose*, *supra*, 6 Cal.4th at pp. 292-293.)

(*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654; see, e.g., *Gray v. Zurich Ins. Co.*, *supra*, 65 Cal.2d at p. 277 [insurer not excused from defense where underlying complaint was for intentional conduct, because it could have been amended to allege negligent or "nonintentional" conduct].)  But "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." (*Waller v. Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 19.)  The risk assumed by Praetorian was that Luna would be liable for unintentionally violating the TILA.  The insurer did not promise to defend against allegations made under state statutes or common law.

"Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage. [Citations.]  A corollary to this rule is that the insured may not speculate about [unpleaded] third party claims to manufacture coverage." (*Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538; accord, *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114, [insured may not speculate about extraneous facts or ways in which the third party might amend its complaint at some future date].)  "[T]he duty to defend, and the extent of that duty, are rooted in basic contract principles.  The insured pays for, and can reasonably expect, a defense against third party claims that are potentially covered by its policy, but no more.  Conversely, the insurer does not bargain to assume the cost of defense of claims that are not even potentially covered." (*Scottsdale Ins. Co. v. MV Transportation*, *supra*, 36 Cal.4th at p. 659; cf. *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 295-299 [defense under "advertising injury" policy provision properly denied where no disparagement of competitor's product was stated or implied in underlying suit alleging false and misleading advertisements and patent and trademark infringement], disapproving *Travelers Property Casualty Company of America v. Charlotte Russe Holding, Inc.* (2012) 207 Cal.App.4th 969.)  Here, Luna and Praetorian were free to

10

"contract for any broader coverage to which they mutually agree." (*Hartford Cas. Ins. Co. v. Swift Distribution, Inc., supra*, at p. 299.) They elected instead a limited indemnity and defense for "errors and omissions" giving rise to a third-party claim under the TILA.

Courts in other jurisdictions have reached similar conclusions. In *Tynan's Nissan v. Am. Hardware Mut. Ins. Co.* 917 P.2d 321 (Colo.App. 1995), a TILA endorsement resembled the one at issue here: it obligated the insurer to pay "all sums which Tynans 'shall become legally obligated to pay as damages solely because of error or omission in failing to comply with § 130, Civil Liability, of Title I (Truth in Lending Act) of the Consumer Protection Act (Public Law 90-321; 82 Stat. 146, et. seq.).' " (917 P.2d at p. 323.) The Colorado Court of Appeals agreed with the lower court that no coverage was provided for the underlying lawsuit, which was brought under that state's Uniform Consumer Credit Code, not under the TILA. Like Luna, the insured automobile dealer protested that it had a reasonable expectation of coverage as would an ordinary layperson. The court rejected that argument, as the asserted expectation was "contrary to the plain and ordinary meaning of the policy language . . . ." As that language was unambiguous, coverage was precluded. (917 P.2d at p. 324.)

Likewise, in *Heritage Mut. Ins. Co. v. Ricart Ford*, 663 N.E.2d 1009, 1013 (Ohio App. 10 Dist. 1995) the TILA rider in a " 'Garage Coverage Form' " was made expressly applicable to " 'damages solely due to Section 130, Civil Liability, of Title I (Truth in Lending Act) of the Consumer Credit Protection Act . . . .' " This provision did not allow for coverage of the Ohio Attorney General's complaint, as that pleading did not include a prayer for damages under section 130 of the TILA, even though it alleged a TILA violation. As in *Tynan's*, the Ohio Court of Appeals found the endorsement language to be "clear and unambiguous" in restricting coverage to "damages '*solely* due to Section 130.' " (663 N.E.2d at p. 1013.)

The Nebraska Supreme Court reached the same result in *John Markel Ford v. Auto-Owners Ins. Co.* 543 N.W.2d 173 (Neb. 1996). There the underlying complaint was

11

brought by the Iowa Attorney General under the Iowa Consumer Fraud Act and the Iowa Consumer Credit Code, seeking costs, attorney fees, and a payment to a consumer education and litigation fund maintained by the Attorney General. The court specifically noted that the latter statute incorporated the TILA and its regulations. The " 'Truth In Lending Errors and Omissions Endorsement' " in the insured automobile dealer's policy obligated the insurer to pay "all sums which [the dealer] shall become legally obligated to pay as damages in an action brought solely under 15 U.S.C. Sec. 1640 (Consumer Credit Protection Act - Public Law 90-321, Title I, as amended, because of error or omission during the policy period in complying with any requirement imposed under 15 U.S.C., Section 1631 et seq." (543 N.W.2d at p. 176.) The Nebraska court rejected the dealer's assertion that if the endorsement language did not expressly cover the Iowa Attorney General's suit, then it was ambiguous and must be construed against the insurer. In the court's view, "[i]t cannot be maintained that the words 'in an action brought solely under 15 U.S.C. Sec. 1640' actually mean 'in any action whatsoever.' " (*Ibid*.)

*TIG Insurance Company v. Joe Rizza Lincoln-Mercury, Inc.*, No. 00 C 5182 (2002) U.S. Dist. LEXIS 4175, 2002 WL 406982 (N.D. Ill. Mar. 14, 2002) presented the same issue, and it not only discussed the insurer's coverage duty but also explicitly addressed the defense obligation.[5] There the insured automobile dealer was the defendant in five separate lawsuits for which it sought a defense by the insurer. The insured's policy included a TILA endorsement phrased in language nearly identical to the one in Luna's policy. Applying state law, the district court acknowledged that the insurer's duty to defend in Illinois is broader than the duty to pay. However, although all five of the

---

[5] Luna emphasizes that an unpublished federal decision cannot be cited or relied upon in federal court. In his reply brief, however, he acknowledges that such cases are citable under our Rules of Court, and may even be considered as persuasive, though not precedential, authority. (Cal. Rules of Court, rule 8.1115; *In re Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18; *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn 6.)

12

underlying complaints alleged violations of the TILA, only one sought damages under the Act; accordingly, only that one complaint was subject to the insurer's defense obligation. The remaining four confined their damages requests to a state consumer fraud statute and common law fraud. Those damages, the district court ruled, were "plainly not covered under the TILA endorsement." (2002 U.S. Dist. LEXIS 4175, at p. 27 [WL 406982 at p. 9].) The court further rejected the argument Luna makes here, that potential coverage exists by virtue of *facts* alleged in the underlying complaint: "This type of analysis, however, is irrelevant because the TILA Endorsement is not triggered by specified conduct or 'facts.' Instead, the narrow coverage provided by the Endorsement is triggered only by a damage claim under the Truth In Lending Act. If, and only if, the claimant seeks damage[s] under the Act is there potential coverage. Only by rewriting the endorsement could there be potential coverage, as [the insured] contends, for a claim for damages under the Illinois Consumer Fraud Act." (2002 U.S. Dist. LEXIS 4175, at p. 28 [WL 406982 at p. 9].)

Although unnecessary to our own conclusion, these consistent decisions from other jurisdictions nonetheless offer compelling support. The procedural distinctions and minor differences in policy language are, in our view, not material to the issues before us. In any event, based on the express, unambiguous language in Luna's policy, we agree with the superior court that it did not provide coverage, actual or potential, for the wrongs alleged in the underlying action by Teixeira. Further, Luna has not shown " 'in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1341, quoting *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) Praetorian's demurrer to the first amended complaint was properly sustained without leave to amend.

*Disposition*

The judgment of dismissal is affirmed.

13

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.

14