HERITAGE MUTUAL INSURANCE COMPANY, Appellee,

v.

RICART FORD, INC., Appellant.

[Cite as *Heritage Mut. Ins. Co. v. Ricart Ford, Inc.* (1995), 105 Ohio App.3d 261.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE01–19.

Decided July 18, 1995.

*Ulmer & Berne, Harold H. Reader* and *Edwin J. Hollern,* for appellee.

*Whann & Associates, Jay F. McKirahan* and *Keith E. Whann,* for appellant.

LAZARUS, Judge.

Defendant-appellant, Ricart Ford, Inc. and other Ricart subsidiaries (collectively referred to as "Ricart"), appeals from a judgment of the Franklin County Court of Common Pleas dismissing its motion for summary judgment and sustaining plaintiff-appellee Heritage Mutual Insurance Company's motion for summary judgment.

The appellant assigns the following two assignments of error:

"1.  The trial court erred in granting plaintiff-appellee's motion for summary judgment."

"2.  The trial court erred in overruling defendant-appellant's motion for summary judgment."

This case arose on February 11, 1992, when the Ohio Attorney General ("AG") filed a complaint for declaratory judgment, a preliminary and permanent injunction, consumer restitution, civil penalties, and fees for alleged violations of the Ohio Consumer Sales Practices Act, as codified in R.C. 1345.01 *et seq.,* against Ricart.  The complaint also included allegations of violations of the Federal Truth-in-Lending Act.  The AG asked for a civil penalty of $650,000 and for consumer relief in an amount to be determined by the court.

Ricart notified Heritage of the pending lawsuit on February 25, 1992.  Ricart told Heritage that it would be seeking coverage under its policy and defense and indemnification for the lawsuit.  Ricart took advantage of an offer to settle the lawsuit for $160,000 two days after notifying Heritage.  Ricart entered into a consent judgment entry on February 27, 1992, with the AG's office.  The consent judgment lists the practices which the AG found to constitute violations of the Ohio Consumer Sales Practices Act.  These violations will be more fully discussed *infra.*

Ricart maintained that Heritage owed it a duty of indemnification. Heritage maintained that, according to the terms of its policy, it owed Ricart nothing for the violations settled upon in the consent judgment. Heritage then filed a complaint for a declaratory judgment, requesting the trial court to declare Heritage free from the duty to defend or indemnify Ricart for violations of the Ohio Consumer Sales Practices Act. Ricart answered and filed a counterclaim to recover damages for Heritage's failure to provide coverage. After discovery, both parties filed motions for summary judgment. The trial court sustained Heritage's motion for summary judgment and overruled Ricart's motion for summary judgment, finding from the evidence before the court that the terms of the insurance policy issued to Ricart required Heritage neither to defend nor to indemnify Ricart. Ricart appeals from this ruling, stating that the lower court erred in its decision.

The standard of review in this case is well established. Pursuant to Civ.R. 56(C), a motion for summary judgment shall be granted if (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881; *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144. An appellate court independently reviews the pleadings and the evidentiary material submitted to the trial court and applies the same standard to determine whether the materials submitted establish a genuine issue of material fact. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. When reviewing the grant of a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411.

Further, in a case where opposing parties file motions for summary judgment, the admission of each party that there are no factual issues is limited to the purposes of the moving party's motion, and such admissions by the movant may not be applied to the adversary's motion. The filing of cross-motions for summary judgment does not establish the absence of an issue of fact. *Johnson v. Kroger Co.* (Oct. 19, 1994), Scioto App. No. 94CA–2218, unreported, 1994 WL 577699.

With this standard of review in mind, we shall first address the issues of "advertising injury" and "misappropriation" as they relate to a genuine issue of material fact. The pertinent and contested language of the garage policy issued to appellant is as follows:

"A.  **COVERAGE**

"We will pay all sums the **insured** legally must pay as damages because of:

"1.  **Personal injury** caused by an offense committed:

"(a)  In the conduct of your business;  * * *

" * * *

"2.  **Advertising injury** caused by an offense committed:

"(a)  In the course of advertising your goods, products or services;  * * *

" * * *

"D.  **ADDITIONAL DEFINITIONS**

" * * *

" '**Advertising injury**' means injury arising out of one or more of the following offenses:

" * * *

"3.  Misappropriation of advertising ideas or style of doing business;  or

"4.  Infringement of copyright, title or slogan."

The policy language clearly demonstrates that it covers personal injuries and advertising injuries.  As there were no allegations of personal injury in the AG's complaint, the issue becomes whether or not there was an "advertising injury" under the terms of the policy.  In other words, do the allegations in the AG's complaint constitute an "advertising injury"?

Ricart asserts that the policy coverage includes its "style of doing business," claiming that the word "misappropriation" modifies only the words "advertising ideas."  Thus, according to Ricart, it was entitled to coverage under the policy because the AG's complaint contained allegations concerning its business practices or style of doing business.  Ricart claims that the interpretation of this clause represents a genuine issue of material fact and, therefore, the trial court should not have granted Heritage's motion for summary judgment.

The law surrounding the issue of construction of an insurance contract is well settled.  The law requires us to read an insurance contract as a whole, *German Fire Ins. Co. v. Roost* (1897), 55 Ohio St. 581, 45 N.E. 1097; *Stickel v. Excess Ins. Co.* (1939), 136 Ohio St. 49, 15 O.O. 570, 23 N.E.2d 839; *Equitable Life Ins. Co. v. Gerwick* (1934), 50 Ohio App. 277, 3 O.O. 572, 197 N.E. 923, and

the interpretation of that insurance contract is a question of law to be decided by a judge. *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380, 15 OBR 497, 474 N.E.2d 320. Where language in a contract of insurance is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949. If a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

██ We find that to interpret this clause as suggested by Ricart would lead to an absurd result. For example, applying Ricart's construction, the very next clause of the policy would then be interpreted as meaning the term "infringement" applies only to the word "copyright" and not to the words "title or slogan." Each clause in that section of the policy is predicated on a verb, an action meant to modify the nouns of the clause. We find, therefore, that the term "misappropriation" is intended to be read with "style of doing business" so that there must be a "misappropriation of the style of doing business." Because the AG's complaint is devoid of allegations of "misappropriation of advertising ideas or style of doing business," Heritage is under no duty to defend or indemnify Ricart.

██ Additionally, Heritage urges this court to find that the AG's allegations of "unfair competition" are not a "misappropriation of style of doing business" within the meaning of the contract of insurance. We find *Seaboard Sur. Co. v. Ralph Williams' N.W. Chrysler Plymouth, Inc.* (1973), 81 Wash.2d 740, 504 P.2d 1139, persuasive on this point. In *Seaboard,* an insurer brought a declaratory judgment action seeking a judgment that it had no duty to defend a suit against an automobile dealer where the state AG sought an injunction for, among other things, "unfair methods of competition and unfair or deceptive acts or practices." The dealership maintained that the suit was for damages due to unfair competition because the relief requested was for the court to make any additional orders or judgments as may be necessary to restore to any person an interest in any monies or property which may have been acquired by violation of the statute. The court in *Seaboard* found that the acts complained of did not constitute unfair methods of competition because there was no allegation that "any competitor had been harmed."

In the instant case, the AG's complaint alleges harm to consumers, not harm to competitors. "Misappropriation of the style of doing business" necessarily involves a competitor. No such allegations were listed in the AG's complaint.

Thus, we find the arguments of Heritage well taken, and we conclude, therefore, that Heritage is under no duty under the terms of this policy to defend or to indemnify for an advertising injury.

■ Next, we shall address the issue regarding the Truth-in-Lending ("TIL") rider attached to and incorporated as part of the garage policy issued by Heritage to Ricart.[1] The portion of the policy directly in question concerns a rider or endorsement, which states:

"This endorsement modifies insurance provided under the following:

"GARAGE COVERAGE FORM

"It is agreed that:

"1. Such insurance as is afforded under the Garage Coverage Form for LIABILITY COVERAGE applies to damages solely due to Section 130, Civil Liability, of Title I (Truth in Lending Act) of the Consumer Credit Protection Act * * *."[2]

Ricart argues that coverage exists under this section of its policy with Heritage, as the AG's complaint alleged TIL violations. Heritage claims Ricart is not entitled to coverage under the TIL rider for two reasons. First, Heritage claims that the policy covers only damages under Section 130 of TILA, and there were no Section 130 damages alleged in the AG's complaint. Second, Heritage maintains that there must be a bodily injury for the TIL rider to apply, and, once again, there were no allegations of bodily injury in the AG's complaint. Therefore, Heritage argues that it is under no duty to defend or indemnify.

As to Heritage's first argument, we find the language of the TIL rider to be clear and unambiguous. The language contained in the rider specifically states that coverage will apply where the insured incurs damages "*solely* due to Section

---

1. The Truth-in-Lending Act, Section 1601 *et seq.*, Title 15, U.S.Code, was intended to protect the consumer in credit transactions, credit advertising, credit billing, and consumer leases. The purpose of TILA is to ensure proper disclosure to the consumer and to protect the consumer from unfair credit practices.

2. Pub.L. 90–321, Section 130, 82 Stat. 157 (1968) (currently Section 1640[a], Title 15, U.S.Code), provides as follows:

"(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this chapter to be disclosed to that person is liable to that person in an amount equal to the sum of

"(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this chapter shall not be less than $100 nor greater than $1,000; and

"(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."

130." (Emphasis added.) We, therefore, find Heritage's argument well taken, and Ricart's objection to the language in the TIL rider without merit.

Second, because we concluded that the TIL rider does not provide coverage for Ricart, we do not need to entertain the issue of bodily injury. We note that, while the policy may not have fulfilled Ricart's expectations of coverage, that issue is not before us.

Further, Ricart urges that, if this court fails to find an ambiguity in the language of the contract, then we must find an ambiguity between the language of the contract and the statement contained in an affidavit given by Ricart's chief financial officer. This argument is not well taken. The affidavit presented by Ricart's chief financial officer constitutes parol evidence. Absent a showing of ambiguity within the contract, parol evidence may not be admissible to affect its construction. *Foster v. Union & Natl. Ins. Co.* (1920), 101 Ohio St. 180, 127 N.E. 865. If the contract is determined to be unambiguous, "intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920. Finding the contract clear and unambiguous, we therefore conclude that there can be no introduction of parol evidence. Accordingly, we find no ambiguity in the insurance contract in the instant case. Based on the foregoing, we find that there is no genuine issue as to any material fact and that Heritage is entitled to summary judgment as a matter of law.

For these reasons, both of appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and TYACK, JJ., concur.