DECISION
Plaintiffs-appellants, S.E.A., Inc. and S.E.A. Investigations, Inc., and defendant-appellant, Dunning-Lathrop Assoc., Inc., appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees Media/Professional Insurance, Inc., Gulf Underwriters Insurance Co., and Wobar, Inc., on various aspects of the multiple claims, counterclaims, and cross-claims between the parties. Appellees have cross-appealed from the trial court's decision limiting the damages recoverable by appellees.
Appellants S.E.A., Inc., and S.E.A. Investigations, Inc. (hereinafter collectively "S.E.A.") do business as a scientific and engineering consulting firm and provide expert analysis and consultation in a variety of fields, including fire investigation, vehicle accident reconstruction, and product safety. S.E.A. also offers a range of laboratory and on-site services including investigation of chemical spills, corrosion analysis, quality assurance, evaluation of regulatory compliance, and environmental sampling and analysis. It is this last area of activity by S.E.A., specifically an environmental real estate site analysis provided for a customer, which gave rise to the present litigation over whether an errors and omission insurance policy secured by S.E.A. from the other parties to the case provided for coverage of a claim brought by the customer against S.E.A.
S.E.A. utilized appellant Dunning-Lathrop Assoc., Inc. ("Dunning-Lathrop") as its insurance broker to procure errors and omissions insurance coverage for its business. Appellee Media/Professional Insurance, Inc., ("Media") was the underwriting manager and claims supervisor for the errors and omissions insurance programs of various insurers, including appellee Gulf Underwriters Insurance Co. ("Gulf"). Beginning in 1985, Media issued errors and omissions liability policies from various insurers to S.E.A. for nine consecutive years. The last of these policies, issued by Gulf for the 1993 policy year, is at issue in the present case. Appellee Wobar, Inc., is the corporate successor to Media, and will generally be included by any reference to Media in this decision. Since at times Media, Gulf, and Wobar have common interests and are similarly situated in the present litigation, they will be collectively referred to as "Media/Gulf" where appropriate.
In 1993 Titanium Industries, Inc., ("Titanium") sued S.E.A. alleging that in 1989 S.E.A. had negligently performed a phase one environmental real estate assessment of an industrial property formerly occupied by the Youngstown Welding and Engineering Company. Titanium alleged that it had purchased the Youngstown Welding site in reliance on S.E.A.'s environmental assessment, but subsequently incurred environmental remediation costs overlooked in S.E.A.'s assessment. Titanium sought to recover the remediation costs from S.E.A as damages for S.E.A.'s negligence. S.E.A., through Dunning-Lathrop, submitted to Media an errors and omissions insurance claim arising from the Titanium lawsuit. Media, through its claims attorney, rejected S.E.A.'s claim for defense and coverage of the Titanium lawsuit on the grounds that the Media/Gulf policy did not insure risks associated with environmental real estate assessment activities. Titanium eventually obtained a substantial jury verdict against S.E.A.; although this was reversed on appeal, TitaniumIndustries v. S.E.A. Inc. (1997), 118 Ohio App.3d 39, and the matter subsequently settled, S.E.A. alleges substantial past costs and future liabilities arising from the Titanium claim.
S.E.A. filed its initial complaint against Dunning-Lathrop, Media, Gulf, and Wobar in 1993, seeking declaratory judgment that the Media/Gulf policy provided coverage and a duty to defend S.E.A. against the Titanium claim. S.E.A.'s complaint also asserted claims against Gulf for breach of contract and bad faith, against Media and Wobar for breach of contract on a third-party beneficiary theory, misrepresentation, negligence, fraud, and bad faith, as well as similar claims against Dunning-Lathrop. Cross-claims between Media/Gulf and Dunning-Lathrop for contribution and indemnity ensued. Through the course of litigation the pleadings of the various parties would be amended to include additional claims: S.E.A. added a claim against Gulf for negligence; Gulf and Media brought counterclaims against S.E.A. asserting fraud and negligent nondisclosure, and cross-claims against Dunning-Lathrop on the same grounds; and Dunning-Lathrop added claims for negligence, fraud, and bad faith in its cross-claims against Media and Gulf.
In the interim, the trial court had initially granted partial summary judgment in 1996 in favor of S.E.A., finding that Gulf had a duty to defend and indemnify the Titanium suit under the errors and omissions coverage. Upon motion for reconsideration by Gulf, the trial court then reversed itself and found that there remained material issues of fact regarding whether the insurance policy was void ab initio due to alleged misrepresentations by S.E.A. during the application process. The trial court thereafter denied S.E.A.'s motion for further reconsideration.
On August 10, 1998, the trial court in two separate decisions granted partial summary judgement for Media and Gulf respectively on all of S.E.A.'s claims. In particular, the court found for Media/Gulf on S.E.A.'s declaratory judgment action for coverage under the insurance policy, finding that S.E.A. had made a material misstatement when applying for insurance in response to an application question regarding whether S.E.A. had ever been refused renewal of insurance or had a policy cancelled for comparable coverage. Based upon this misstatement, the court declared the 1993 policy issued to S.E.A. by Media/Gulf to be voidab initio. Based in part on the conclusion that the policy was void abinitio, the court further found that Media and Gulf were entitled to summary judgment on S.E.A.'s remaining claims for negligence, misrepresentation, breach of contract, fraud, and bad faith.
On September 3, 1999, the trial court rendered the decision from which the present appeal is taken, addressing the parties' respective cross-motions for summary judgment on most of the remaining claims then pending. The court granted partial summary judgment for Media and Gulf on their counterclaims against S.E.A. and cross claims against Dunning-Lathrop for negligent misrepresentation, but denied summary judgement on Media and Gulf's fraud claims and on the question of whether attorney fees should be awarded as damages. The trial court also granted summary judgment for Media and Gulf on Dunning-Lathrop's cross-claims for negligence, negligent misrepresentation, fraud, bad faith, contribution, and indemnity. Lastly, the court denied Dunning-Lathrop's and S.E.A.'s own motions for summary judgement.
The parties have timely filed their respective appeals and cross-appeals from the trial court's judgment. S.E.A. brings the following assignments of error:
Assignment of Error Number 1:
 The Court of Common Pleas' decision granting summary judgment to Defendants-Appellees on Plaintiffs-Appellants' claims for coverage under an insurance contract and Defendants-Appellees' claim of negligent misrepresentation based upon an alleged misrepresentation by the insured in its answer to the application for insurance was contrary to law when (1) three (3) industry experts testified that the answer of the insured was correct, and was not a misrepresentation, and (2) there was no evidence submitted by the insurance company to refute the testimony of the three experts, and (3) the trial court determined that whether the applicant gave a false answer to a question on the insurance policy was a question of law for the court, rather than a question of fact for the jury, and (4) the reasonable reliance of the insurer upon the insured's answer and the materiality of that answer are genuine issues in light of the insurer's knowledge of the facts that are the subject matter of the alleged misrepresentation.
Assignment of Error Number 2:
 The Court of Common Pleas' decision granting summary judgment to Defendants-Appellees on Plaintiffs-Appellants' claims of negligence and bad faith were contrary to law when (1) the conduct of the underwriter fell below the standard of care, and (2) expert testimony established the standard of care, and (3) the underwriter failed to inquire of the insured as to activities of the insured that were disclosed in the insurance application, and (4) the underwriter and the insurer failed to disclose to the insured that it had a secret and undisclosed exclusion for claims that were squarely within the range of services provided by the insured to its clients and which were disclosed in the insured's application for insurance.
Assignment of Error Number 3:
 The Court of Common Pleas' decision granting summary judgment to Defendants-Appellants on the counterclaim based upon alleged misrepresentation of the insured in its answer to the application for insurance was contrary to law, for all of the reasons discussed in Assignment of Error Numbers 1 and 2.
Dunning-Lathrop brings the following assignments of error:
ASSIGNMENT OF ERROR NO. 1:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998, its entries of October 27, 1998, its decision of September 3, 1999 and its final judgment entry of January 18, 2000, when it granted in part Media/Gulf's motion, filed September 18, 1998, for partial summary judgment on their cross-claim against appellant Dunning-Lathrop.
ASSIGNMENT OF ERROR NO. 2:
 the trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998, its entries of October 27, 1998, its decision of September 3, 1999 and its final judgment entry of January 18, 2000, when it denied appellant Dunning-Lathrop's motion, filed February 19, 1999, for partial summary judgment on its cross-claim against Media/Gulf.
ASSIGNMENT OF ERROR NO. 3:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998, its entries of October 27, 1998, its decision of September 3, 1999 and its final judgment entry of January 18, 2000, when it granted Media/Gulf's motion, filed February 18, 1999, for summary judgment on appellant Dunning-Lathrop's amended cross-claim.
ASSIGNMENT OF ERROR NO. 4:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998, its entries of October 27, 1998, its decision of September 3, 1999 and its final judgment entry of January 19, 2000, when it denied appellant Dunning-Lathrop's motion, filed February 19, 1999, for summary judgment on Media/Gulf's cross-claim against appellant Dunning-Lathrop.
ASSIGNMENT OF ERROR NO. 5:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998, its entries of October 27, 1998, its decision of September 3, 1999 and its final judgment entry of January 18, 2000, when it granted in part, Media/Gulf's motion, filed September 19, 1998, for partial summary judgment on their counterclaim against S.E.A.
ASSIGNMENT OF ERROR NO. 6:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998 and September 3, 1999 and its entry of October 27, 1998, and its final judgment entry of January 18, 2000, when it granted Media/Gulf's motion, filed February 18, 1999, for partial summary judgment on S.E.A.'s complaint.
ASSIGNMENT OF ERROR NO. 7:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decisions of August 10, 1998, its entries of October 27, 1998, its decision of September 3, 1999 and its final judgment entry of January 18, 2000, when it denied S.E.A.'s motion filed February 19, 1999, for summary judgment on Media/Gulf's counterclaim.
ASSIGNMENT OF ERROR NO. 8:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decision of November 5, 1996, when it granted, in part, Gulf's motion for reconsideration, filed August 13, 1996, and issued a modified decision on S.E.A.'s motion for partial summary judgment, filed June 3, 1996.
ASSIGNMENT OF ERROR NO. 9:
 The trial court erred to the prejudice of appellant Dunning-Lathrop in its decision of March 13, 1997, when it denied S.E.A.'s motion for reconsideration, filed December 24, 1996.
Media, Gulf, and Wobar have filed a joint brief and bring the following assignments of error:
First Assignment of Error:
 The Court of Common Pleas erred in holding that none of the attorney's fees incurred by cross appellants in various related actions in the present litigation were incurred in "prior litigation" for the purpose of applying the "tort of another" exception to the "American Rule" set forth in Restatement of Torts Second section 914, and thereby erroneously held that the American Rule precluded cross appellants from recovering any attorney's fees incurred in this litigation as damages.
Second Assignment of Error:
 The Court of Common Pleas erred in citing the failure of cross appellants to make an evidentiary showing as to the damages incurred in "prior litigation" as a ground for holding that the "tort of another" exception to the "American Rule" set forth in Restatement of Torts Second section 914 was not applicable, and thereby erroneously held that the American Rule precluded cross appellants from recovering attorney's fees incurred in this litigation as damages.
The threshold issue in the present case, which was addressed as such by the trial court and will be given corresponding priority here, is whether Media, Gulf, and Wobar were entitled to summary judgment on S.E.A.'s claim that it was entitled to coverage and a defense for the Titanium claim. All other claims in the present matter are either collateral to or flow directly from this issue, which is raised in S.E.A.'s first and Dunning-Lathrop's sixth assignments of error.
Pursuant to Civ.R. 56(C), a motion for summary judgment shall be granted if (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Davis v. Loopco Indus., Inc. (1993), 66 Ohio St.3d 64. Upon appeal, an appellate court will independently review the pleadings and evidentiary material submitted to the trial court in support of and opposition to summary judgment, and apply the same standard to determine whether the materials submitted establish a genuine issue of material fact. Heritage Mut. Ins. Co. v. Ricart Ford, Inc. (1995),105 Ohio App.3d 261, 264. When reviewing the grant of summary judgment, the appellate court will review the judgment independently and does not defer to the trial court's conclusions. Midwest Specialties, Inc., v.Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6. Furthermore, in cases where the opposing parties file cross-motions for summary judgment, the assertion by each party that there are not factual issues is limited to the purposes of the moving party's motion, and such admissions by the movant may not be applied to the adversary's motion. The filing of cross-motions for summary judgment accordingly does not establish the absence of a material issue of fact. Heritage Mut. Ins.Co., at 264.
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Takach v. Am. Med. Technology, Inc. (1998), 128 Ohio App.3d 457. (quoting from Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
As set forth above, the trial court determinations in favor of appellees were pronounced serially in a succession of decisions, only the last two phases of which were reflected by judgment entries. In the August 10, 1998, decision granting summary judgment for Gulf on S.E.A.'s claim that coverage applied under the errors and omissions policy, the trial court found that the policy was void ab initio due to S.E.A.'s misrepresentations and omissions, when applying for the policy, regarding the scope and nature of its environmental real estate assessment activities. The court found that, while S.E.A. had at the outset of its relationship with Media furnished a brochure (the "white brochure") detailing various laboratory services such as investigation of "chemical spills" and "environmental sampling and analysis," this brochure did not mention nor describe environmental real estate assessments as part of S.E.A.'s business activities. The trial court found that the white brochure was not sufficient to put Gulf on notice of S.E.A.'s risks incurred in performing environmental real estate assessments, and that S.E.A. had failed to furnish, with its annual applications for insurance policy renewals, a more detailed "blue brochure" which provided more complete and specific information about the environmental real estate assessments. The blue brochure was developed some years after the white brochure and some years after S.E.A. initially obtained coverage through Media.
As an additional basis for finding a material nondisclosure or misstatement by S.E.A. in applying for a 1993 renewal of the policy, the trial court found that S.E.A. had incorrectly answered "no" to a question on the policy application inquiring whether "similar insurance" had "ever been cancelled or refused." The trial court found that another insurer, General Star Indemnity Company ("GenStar") had issued a binder of insurance for substantially comparable coverage to S.E.A., and then subsequently declined to issue a policy.
In the trial court's subsequent decision addressing the other multiple claims in the case, it appears to have reversed itself on the issue of whether there remained a material issue of fact as to whether S.E.A. had, in fact, furnished a copy of the blue brochure to Media, either directly by mail or by means of a Media employee picking up a copy of the blue brochure at a trade show. While the trial court's later decision does not explicitly modify its earlier decision and entry on the coverage issue, based upon the affidavit and deposition relied upon by the trial court in finding that there remained a issue of fact regarding communication of the blue brochure, in one form or another, to Media acting as Gulf's agent, we proceed on the basis that the sole grounds for finding that the policy is void ab initio due to a material misstatement or nondisclosure by S.E.A. arises from S.E.A.'s alleged non-disclosure of failed attempts to obtain comparable coverage elsewhere.
The "Conditions" section of the insurance policy issued by Gulf to S.E.A. included the following "Warranties and Representations:"
 The NAMED INSURED warrants and agrees as a condition to the company's obligations hereunder:
 (a) that the statements made in the application and in its attachments and any materials submitted therewith are true and are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy;
 (b) that the statements made in the application and in its attachments and any material submitted therewith are its representations; that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by the company under the policy and that this policy is issued in reliance upon the truth of such representations;
 (c) that in the event that the application, including its attachments and any materials submitted therewith, contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the company under this policy, this policy in its entirety shall be void and of no effect whatsoever[.]
The application for insurance as completed by S.E.A. contained the following question:
 Has any application for similar insurance made on behalf of the applicant or any of its predecessors in business or present partners, owners, officers, sales personnel or employees ever been declined or has any such insurance ever been cancelled or renewal refused ___ Yes X No. If yes, please give details.
Based upon the language in the policy, and pertinent case law, the trial court correctly concluded that S.E.A.'s responses in the application were incorporated into the policy and were material. We disagree, however, with the trial court's conclusion that there did not remain an issue of fact as to whether S.E.A. had been refused or declined insurance coverage by GenStar, such that S.E.A.'s dealings with GenStar should have necessarily been disclosed in applying for the 1993 policy from Gulf. While the trial court stated that "the interpretation of an insurance contract involves a question of law to be decided by a judge," quoting Leber v. Smith (1994), 70 Ohio St.3d 548, 553, this court has held that if a term within a policy of insurance is not defined by the contract and the term has a special meaning within the particular trade or industry concerned, the court may resort to extrinsic evidence to establish that meaning. Thus, prior to establishing the meaning of this term, summary judgment in favor of the insurer constitutes error inasmuch as a question of fact exists as to the meaning of the material contract term. Aetna Cas. Sur. Co. v. Roland (1988), 47 Ohio App.3d 93. S.E.A. presented evidence from three experts that the terms "cancelled" or "renewal refused" as used in the insurance industry did not apply to S.E.A.'s dealings with GenStar, and that S.E.A.'s response of "no" on the application to Media/Gulf was accurate based upon the course of negotiations between S.E.A. and GenStar which resulted in nonprovision of coverage by GenStar.
Brian Van Cleave, an underwriter for the managing agent which underwrites and issues policies for GenStar and other carriers, was involved when S.E.A. contacted him through Dunning-Lathrop to investigate obtaining insurance from GenStar at the end of 1990. Van Cleave testified that there was never a meeting of the minds between S.E.A. and GenStar and that these parties never entered into an insurance contract other than an initial binder to cover the period during which S.E.A. and GenStar investigated the possibility of coverage.
S.E.A. also presented the affidavit of James Arnold, an agent with Insurance Intermediaries, Inc., who dealt directly with Dunning-Lathrop concerning the possibility of obtaining coverage for S.E.A. from GenStar. Arnold's affidavit states that no policy was ever issued or cancelled by GenStar, and that there was never a policy in effect between the parties. Based upon the dealings between S.E.A. and GenStar, Arnold specifically testified that S.E.A.'s answer of "no" on the policy application "relating to whether it had an insurance policy declined or cancelled in the negative * * * was a proper response in the application process:"
 4. It is my opinion that because Media Professional Insurance, Inc. (hereinafter referred to as "Media") and Gulf Underwriters Insurance Co. (hereinafter referred to as "Gulf") agreed to backdate the SEA Specialty Errors or Omissions Policy (hereinafter referred to as "EO Policy) to January 1, 1991, no insurance policy with GenStar was ever issued. Further, it is my opinion that GenStar did not issue a new insurance policy to SEA, nor was any policy cancelled or declined. Due to insufficient lead time prior to the January 1, 1991 anniversary date, the binding of coverage with GenStar was done to allow GenStar time to complete their underwriting review of SEA. There were several issues still outstanding when negotiations between SEA and GenStar broke down. Accordingly, there never was a meeting of the minds as to EO coverage with GenStar.
 (5) There was never a policy in effect by and between GenStar and SEA.
 (6) There was never a lapse of SEA's coverage with existing EO policies through Media.
 (7) If presented with the question on re-application of SEA with Media/Gulf as to whether prior insurance coverage had ever been declined or cancelled, the appropriate answer would be NO since no other policies had been issued and coverage with Media/Gulf had been continuous with no lapse.
 (8) The action of SEA in answering the question in Media's reapplication form relating to whether it had an insurance policy declined or cancelled in the negative was not a fraud and was a proper response in the application process. There was no reason to list any other prior specialty EO carrier other than Gulf.
(Arnold Affidavit.)
In addition, the affidavit of Robert Hughes, S.E.A.'s expert witness on the property and casualty industry and the duties and responsibilities of underwriters, was that there was "no cancellation" of a policy because the binder issued by GenStar to S.E.A. was cancelled "flat," or abinitio, and this was "not a cancellation as I understand the meaning of that term. It is, rather, a voiding of coverage as if the policy never existed." (Hughes Affidavit, at paragraph 18.)
Concededly, there is contrary evidence in the record regarding whether coverage, was, in fact, refused to S.E.A. by GenStar based upon the unacceptable risk of real estate environmental assessments. A memorandum from Arnold to Bill Dunning, a principal at Dunning-Lathrop, states that "because GenStar is unwilling to cover the site analysis for real estate transactions, Bill Dunning has contacted the prior carrier[.] Bill would like to cancel the GenStar policy flat eff. 1/1/91." Arnold's deposition also indicates that GenStar may have been reluctant to insure the environmental real estate assessments performed by S.E.A.:
 Q. Do you recall any phone conversations with Mr. Van Cleave in which he explained to you that he was going to cancel it"
A. Yes, I do recall that.
* * *
 Q. Do you recall what explanation he gave for issuing the notice of cancellation?
 A. I think it was the environmental where it was real estate site assessments, I believe. I probably have that in my notes.
 Q. Did you inform someone at Dunning-Lathrop of this conversation as soon as you had it?
A. Yes.
* * *
 Q. Well, in speaking to Bill Dunning, did you explain the reasons that had been given to you by Brian Van Cleave for the cancellation of the binder?
A. Yes.
* * *
 But I do recall talking to Bill Dunning, you know, explaining as it states there, why they were unwilling to cover it, and that he wanted to see if they would cancel it flat back to January 1 if he could get coverage reinstated with Homestead.
Q. Okay.
A. And then Brian Van Cleave was agreeable to that.
Q. That's, in fact, what happened, correct?
A. Yes.
 Q. Now, before the decision by Dunning and presumably people at SEA to cancel flat, did you have an understanding that Gen. Star might still be willing to issue a policy just simply on different terms than wanted by SEA?
 A. No, I never understood that to be an option. I mean, I think basically because, as it says there, since there was real estate site analysis, that was prohibited in their treaty so, therefore, the only option was they couldn't cover it.
 Q. Do you remember any discussion about the possibility of a policy that simply excluded that type of service?
A. No, I don't recall that.
While this establishes that there is evidence in the record upon which a trier of fact could ultimately conclude that S.E.A. had been "refused renewal" insurance based upon issuance then cancellation of a binder by GenStar, and that S.E.A.'s responses in the insurance application to Gulf were therefore inaccurate, the evidence to the contrary regarding the trade definition, or absence thereof, for the terms cancellation and/or refusal of renewal nonetheless raises a material issue of fact, pursuant to Aetna Cas. Sur,. supra. Because S.E.A. has introduced reliable evidence from three experts that the terms are not given a special meaning within the insurance industry and that S.E.A.'s response of "no" was not incorrect on this basis, we find that the trial court erred in determining the impropriety of S.E.A.'s response as a matter of law. We accordingly find that there remains a material issue of fact which precludes summary judgment on the question of whether the policy issued by Gulf to S.E.A. may be found void ab initio based on S.E.A.'s failure to disclose the prior denial of insurance by GenStar. S.E.A.'s first assignment of error and Dunning-Lathrop's sixth assignment of error are therefore sustained and the trial court's grant of summary judgement for Gulf on S.E.A.'s claims for breach of contract and declaratory judgement is reversed.
We now turn to S.E.A.'s second assignment of error, which asserts that the trial court erred in granting summary judgment to appellees on S.E.A.'s remaining claims against Gulf and Media for negligence, misrepresentation, fraud, and bad faith. The misrepresentation and fraud claims are based on S.E.A. and Dunning-Lathrop's assertions that Media and Gulf, did not disclose that they had promulgated internal guidelines prohibiting coverage for risks arising out of environmental real estate assessments, and thus a breached duty of disclosure of the scope of coverage to the insured. With respect to the negligence claims, S.E.A. and Dunning-Lathrop assert that Gulf and Media negligently breached their duty to inquire in more detail as to the insured's activity to properly determine the risks sought to be covered by the insured.
There is substantial dispute in the present case whether the activities outlined in the "white brochure" submitted with the application by S.E.A. gave sufficient notice of S.E.A.'s environmental real estate assessment activities, and caused those activities to be included in the policy coverage. The volume of evidence both for and against this demonstrates, at least, a very substantial conflict between S.E.A. and its insurers regarding their respective understandings of the risks arising from S.E.A.'s business activities and the corresponding scope of coverage provided under the Gulf policy. These differing interpretations of the scope of coverage are reflected in S.E.A.'s declaratory judgement, breach of contract, and bad faith actions. The negligence claim goes a step further by asserting that Gulf and Media by act or omission are responsible for creating the differing views on scope of coverage in this case by failing to inquire beyond the responses furnished on S.E.A.'s application regarding the type of business engaged in.
Unfortunately, the evidence in the present case tends to establish that all parties may have preferred to remain vague about their respective expectations of coverage under the insurance policy issued by Gulf to S.E.A. However, the record does not contain evidence of negligence on the part of Gulf/Media creating that divergence of opinion. The deposition testimony of S.E.A.'s own expert, Robert Hughes, much relied upon by appellants in this respect, established no more than his belief that it was sound practice for an underwriter to familiarize himself with the insured's risks through inquiry if necessary, and that he was unaware of the legal ramifications of failing to do so. Without establishment of alegal duty on the part of Gulf to inquire actively during the application process, S.E.A.'s recovery upon this negligence theory was therefore properly denied through summary judgment by the trial court.
With respect to the alleged fraud and misrepresentation, independent of any breach of a supposed duty to inquire, appellants assert that Media and Gulf misrepresented the scope of insurance coverage under the policy, and failed to disclose an internal prohibition against insuring environmental real estate assessments. Under the terms of the policy, the representations made by Media as to the scope of the policy coverage indicate that the policy would cover "insured services" outlined in S.E.A.'s application: "accident investigations, evidentiary services and forensic analysis," and the services described in S.E.A.'s white brochure appended to the application. Again, while there is dispute over whether these descriptions include or exclude S.E.A.'s environmental real estate assessment activities, they do not support, of themselves, any conclusion that Gulf and Media misrepresented the scope of coverage under the insurance policy.
The trial court took S.E.A.'s misrepresentation and fraud claims as representing claims for fraudulent inducement, a characterization which appellants do not contest upon appeal. As noted by the trial court, the elements for fraudulent inducement to enter into a contract are "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) an intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." Metropolitan Life Ins. Co. v. Triskett Illinois, Inc. (1994),97 Ohio App.3d 228, 235, (citing Mussivand v. David (1989),45 Ohio St.3d 314.)
Appellants do not provide legal authority for the proposition that the insurer has a duty to the applicant to enumerate and outline, beyond the language of the policy, all risks which it may ultimately decline to insure. The case of Roberts v. State Farm Mut. Auto. Ins. Co. (Jan. 7, 1982), Cuyahoga App. No. 43388, unreported, relied upon by appellants, falls short of this proposition. In Roberts, the issue was whether the facts of the case imposed a duty on the insurer or its agent to advise an individual applicant for automobile insurance that underinsured motorists coverage must be obtained separately from uninsured motorists coverage and was not included therein. The court held that "the relationship between an insurance salesman and his customer may take on fiduciary dimensions when reliance is reasonably reposed in the salesman by the customer." Id. at 4. The general rule, however, is to the contrary: the insured has a duty to examine the coverage provided and is charged with the knowledge of the contents of the insurance contract, which determines the scope of coverage. First Catholic Slovak Union v. Buckeye Union Ins.Co. (1986), 27 Ohio App.3d 169. The evidence in the record establishes that S.E.A., through its agent, Dunning-Lathrop, did not rely on Media or Gulf for the type of expertise and guidance found to impose a fiduciary duty in Roberts, but rather that all concerned were in the position of sophisticated parties dealing at arm's length.
We agree with the trial court that there is no material issue of fact regarding fraud on the part of appellees in this respect. No evidence has been adduced to establish that Gulf/Media intended S.E.A. to rely on or improperly interpret the policy as providing coverage for environmental real estate assessments. As such, there is insufficient evidence in the record to establish a material issue of fact that Gulf or Media engaged in a misrepresentation or fraud by stating that coverage for environmental real estate assessment existed, with the intent of later denying such coverage. We therefore find that the trial court properly granted summary judgment for Gulf/Media on S.E.A.'s misrepresentation and fraud claims.
Turning to the trial court's grant of summary judgment on S.E.A.'s bad faith claim, we note that summary judgment in favor of Gulf was based essentially on the trial court's conclusion that the insurance policy was void ab initio. In addressing bad faith claims against an insurer, the Ohio Supreme Court has held that "an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor * * *." Zoppo v. Homestead Ins. Co. (1994),71 Ohio St.3d 552, paragraph one of the syllabus. As noted by the trial court "the insurer's duty of good faith and fair dealing derives from and exists solely because of its contractual relationship with its insured."Eastham v. Nationwide Mut. Ins. Co. (1990), 66 Ohio App.3d 843, 846. "Liability for bad faith must be strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship." Id. at 847. In the absence of a valid contract of insurance, the trial court found that there was no basis upon which to impose a duty of good faith upon Gulf as an insurer. Because our decision reopens the question of whether a contract of insurance in fact existed between S.E.A. and Gulf, and because of the contradictory factual allegations which prevail in this case regarding the circumstances of Gulf's denial of coverage, we find that the question of bad faith in the present matter is reopened as well. We accordingly find that the trial court's grant of summary judgment in favor of Gulf on S.E.A.'s bad faith claim must be reversed, and S.E.A.'s second assignment of error is sustained in this respect only.
The trial court's August 10, 1998 decision, also granted summary judgment for Media on an additional claim by S.E.A. against Media on breach of contract on a third party beneficiary theory. The trial court found that there was no contract under which S.E.A. could be found to be an intended beneficiary pursuant to Hill v. Sonitrol of SouthwesternOhio, Inc. (1988), 36 Ohio St.3d 36 . Upon appeal, S.E.A. does not argue error on the part of the trial court in granting summary judgment on this particular claim, nor does the record disclose any basis for finding such error. The trial court's judgment is therefore affirmed with respect to the third party beneficiary breach of contract claim by S.E.A. against Media.
In summary, we find that the trial court did not err in granting summary judgment on S.E.A.'s claims against Gulf and Media for negligence, misrepresentation, and fraud, nor on S.E.A.'s claim against Media for breach of contract on a third party beneficiary theory. The trial court did err, however, in granting summary judgement on S.E.A.'s bad faith claims. S.E.A.'s second assignment of error is accordingly sustained in part and overruled in part.
We now turn to the counterclaims and cross-claims in the action which were addressed in the trial court's final decision rendered on September 3, 1999. Our decision with respect to the existence of a material issue of fact regarding any misrepresentation by S.E.A. on the insurance application requires reversal of the grant of summary judgment for Media and Gulf on their counterclaims and cross-claims for negligent misrepresentation, fraud, and bad faith. S.E.A.'s third assignment of error and Dunning-Lathrop's first and fifth assignments of error are accordingly sustained.
With respect to the trial court's grant of summary judgment for Media and Gulf on Dunning-Lathrop's cross-claim, which asserted claims for negligence, contribution, indemnity, fraud, bad faith, and negligent misrepresentation, we note that the trial court's decision does not fully address each of these causes of action but appears to base summary judgment upon the failure of S.E.A.'s claims against Media and Gulf. Factual issues thus remain with respect to Dunning-Lathrop's right to contribution and/or indemnity, based upon potential liability to S.E.A. by Dunning-Lathrop. However, for the same reasons as given in addressing S.E.A.'s comparable claims against Gulf and Media, summary judgment was appropriate in favor of Gulf and Media on Dunning-Lathrop's cross-claims for negligence, negligent misrepresentation, and fraud. Furthermore, Dunning-Lathrop has advanced no authority for the proposition that an insurance agent, as opposed to an insured, may sustain a bad faith action against an insurer, and its bad faith claim is subject to summary judgment as well. We therefore find that the trial court did not err in granting summary judgment for Media and Gulf on of Dunning-Lathrop's cross-claim, with the exception of the claims for contribution and indemnity. Dunning-Lathrop's third assignment of error is accordingly sustained in part and overruled in part.
`Finally we turn to the remaining assignments of error in this case, all of which shall be overruled. Dunning-Lathrop's second, fourth, and seventh assignments of error attempt to appeal from a denial of summary judgment by the trial court. It is well settled in Ohio that a decision denying a motion for summary judgment does not constitute a final appealable order, except for limited statutory exceptions, none of which are applicable here. Celebrezze v. Netzley (1990), 51 Ohio St.3d 89;State ex rel. Overmyer v. Walinski (1966), 8 Ohio St.2d 23; Lelux v.Chernick (1997), 119 Ohio App.3d 6. Dunning-Lathrop's eighth and ninth assignments of error attempt to appeal from the trial court's grant and denial, respectively, of motions for reconsideration filed by the parties in the trial court. A motion for reconsideration is not provided for in the civil rules and is a nullity. Lorain Edn. Assn. v. Lorain City SchoolDist. Bd. of Edn. (1989), 46 Ohio St.3d 12. Accordingly, the trial court's decisions in this respect are only appealable to the extent that they are reflected in the final judgment. Actions taken by the court when ruling upon the motions for reconsideration per se may not form the subject of an assignment of error. Dunning-Lathrop's second, fourth, seventh, eighth and ninth assignment of error are accordingly overruled.
Gulf and Media jointly present two assignments of error on appeal, both addressing the issue of damages awarded pursuant to the grant of partial summary judgment in favor of appellees. Both assignments of error are rendered moot by our prior determinations on other issues, and are overruled.
In summary, appellant S.E.A.'s first and third assignments of error are sustained, and the second assignment of error is sustained in part and overruled in part. Appellant Dunning-Lathrop's first and fifth assignments of error are sustained, third and sixth assignments of error are sustained in part and overruled in part, and second, fourth, seventh, eighth, and ninth assignments of error are overruled. Cross-appellants Media and Gulf's first and second assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas granting partial summary judgment for appellees is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with law and this opinion.
TYACK and BROWN, JJ., concur.