{¶ 47} I respectfully dissent from the majority view that a question of fact exists as to whether National City Bank effectively rejected UM/UIM coverage under the business auto policy at issue in this case. I would affirm the trial court's ruling that National City did not validly reject UM/UIM coverage.
 {¶ 48} I also respectfully dissent from the majority view that the decedent was not an insured under the integrated risk policy. I would reverse the trial court decision that denied coverage under this policy to the decedent.
 {¶ 49} I concur with the majority view and analysis that the issue of whether National City is self-insured is irrelevant because the business auto policy was issued with a UM/UIM endorsement. I also concur with the majority view and analysis that the decedent was an insured entitled to medical payments under the business auto policy. Further, I concur with the majority view and analysis that the integrated risk policy includes automobile liability coverage, and as such, Federal was required to offer UM/UIM coverage under the policy. The failure to do so resulted in the inclusion of such coverage by operation of law.
 {¶ 50} I also agree with the majority view and analysis that the plaintiff was an insured under the integrated risk policy. Lastly, I agree with the majority view, albeit for somewhat different reasons, that the general liability policy is not an automobile liability policy that would require Federal to offer UM/UIM coverage.
I. Issues involving the purported rejection of UM/UIM coverage under the business auto policy:
 {¶ 51} The majority correctly points out that the finding by the trial court that no valid rejection occurred was based on the erroneous view that no separate written offer of UM/UIM coverage was made. As noted, the policy itself included UM/UIM coverage so a separate offer was unnecessary. Nevertheless, the trial court reached the correct decision, albeit for the wrong reasons. "When a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial."Gunsorek v. Pingue (1999), 135 Ohio App.3d 695, quoting State v. Payton
(1997), 124 Ohio App.3d 552.
 {¶ 52} The majority notes that it is unclear from the record whether the person who signed the form, Elizabeth Hagman, was an actual representative of the insured, National City Corporation. Further, it is unclear as to when a second signer, Thomas Richlovsky, actually signed the document purportedly rejecting coverage. These facts, coupled with the endorsement for the return of premiums being dated more than two years after the coverage was purportedly rejected and several months after the accident, make the rejection invalid. I fail to see what will be gained from further proceedings in the lower court to effectively change the facts as they existed at the time of this claimed rejection of UM/UIM coverage.
II. Issues involving the integrated risk policy and plaintiff's decedent:
 {¶ 53} I would find that the integrated risk policy in this case is an umbrella policy because it affords additional coverage for damages covered under the business auto policy. I can find no clear authority for the position of the majority that this court has previously found that the integrated risk policy is not an umbrella policy. I would evaluate such policies by the specific language of the particular policy at issue, not by the label or name the policy is given. The integrated risk policy here qualifies as an umbrella policy because it provides excess coverage beyond the insured's primary policy. Cleveland Builders SupplyCo. v. Farmers Ins. Group of Columbus (1995), 102 Ohio App.3d 708.
 {¶ 54} The majority finds that the definition of "who is an insured" in the integrated risk policy should, logically, control who is covered for UM/UIM coverage, even where it is imposed by operation of law. The policy at issue here only contained the word "you," viewed by the majority as applying only to employees, with no additional qualifying language for non-employee family members. The absence of this qualifying language is viewed as fatal by the majority. Nevertheless, the majority opinion does not address the fact that the decedent was an "insured" for purposes of the underlying business auto policy.
 {¶ 55} In Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999),85 Ohio St.3d 660, the Supreme Court of Ohio ignored restrictive language in umbrella/excess policies for UM/UIM coverage that arose by operation of law. In applying UM/UIM coverage by operation of law, Scott-Pontzer
clearly avoided the "scope of employment language," limiting that language to the excess liability coverage. The court found the restrictive language was meaningless to the UM/UIM coverage because that coverage was imposed by operation of law. Id. at 666. Nevertheless, the court presumably applied the definition of the underlying policy for determining who was an insured. See Id. at 665.
 {¶ 56} In Holliman v. Allstate Ins. Co. (1999), 86 Ohio St.3d 414, decided shortly after Scott-Pontzer, the Supreme Court of Ohio, in adopting the analysis of the Tenth District Court of Appeals, held the restrictive language of the phrase "any resident relative" in the definition of who is an insured effectively limited UM/UIM coverage thatdid not arise by operation of law.
 {¶ 57} I see the Holliman and Scott-Pontzer decisions as inconsistent. Drawing distinctions between coverage that arises by operation of law and coverage that is expressed in a policy distorts the contractual relationship of the parties. Decisions that apply definitional restrictions in one setting and ignore them in another only serve to foster divergent results in defining who is an insured in insurance contract interpretation. Either we give deference to the UM/UIM statute's public policy principle across the board or we strictly apply the definitional language in all situations.
 {¶ 58} The majority relies on Scott-Pontzer to afford coverage to plaintiff Renter under the integrated risk policy, but then, by implication, uses the logic of Holliman to deny decedent coverage under the same policy. I fail to see the logic in the distinction often raised that Scott-Pontzer deals with UM/UIM coverage that arises by operation of law from Holliman and similar cases, where UM/UIM coverage is contained in a policy.
 {¶ 59} If the definition of who is an insured in contract law is to have any real meaning, then it should be universally applied, or ambiguity exists. Holliman is simply a well-written and well-reasoned "end run" around Scott-Pontzer that has the effect of limiting the scope of Scott-Pontzer without expressly overruling it. If the Supreme Court wanted to overrule Scott-Pontzer with Holliman, it should have done so. The two decisions are inconsistent when analyzed from the perspective of "who is an insured" rather than from the perspective of how the coverage arises. The failure to address this fundamental issue has caused much of the confusing "a la carte" analysis surrounding Scott-Pontzer.
 {¶ 60} Further, I cannot ignore that in the instant case, as inScott Pontzer, the decedent was an insured for purposes of the underlying business auto policy. This policy was expressly linked to the integrated risk policy by the very terms in the integrated risk policy. To ignore the definition of one policy while applying an interpretation of a definition in a second policy, where both policies are linked, does not appear to be logical. This court addressed the question of how the definition of "who is an insured" in one Scott-Pontzer policy was tied to the coverage provision of the second policy in Scott-Pontzer that arose by operation of law. In Buder v. Indiana Ins. Co., Cuyahoga App. No. 81849, 2003-Ohio-2370, this court, in analyzing Scott-Pontzer said:
"Presumably, the definition of the insured contained in the underlyingpolicy of insurance in Scott-Pontzer sufficed for determining who was aninsured for UIM coverage implied by operation of law in theexcess/umbrella policy. n2
 "n2 This is a necessary inference since the court refused to apply thelanguage that identified who was insured in the excess/umbrella liabilitypolicy. In other words, it is nonsensical to conclude that the OhioSupreme Court relied upon the definition of who is an insured in theexcess/umbrella policy for purposes of determining the insured in the UIMcoverage implied by operation of law because that policy clearly limitedinsured employees to those acting within the scope of employment. If thecourt had construed the language of the excess/umbrella policy,Scott-Pontzer, who was injured operating his personal vehicle whileoff-duty, would not have been an insured. See Scott-Pontzer v. LibertyMutual Fire Ins. Co. (Jan. 20, 1998), Stark Cty. App. No. 97-CA-0152,1998 Ohio App. LEXIS 323 (setting forth the language of theexcess/umbrella insurance policy)."
 {¶ 61} While contracting parties should be free to contract and define who is an insured, policies that are expressly linked should either have definitions and coverage terms that are consistent with each other, or expressly and clearly state at the front of the policy that the parties covered, or coverage terms provided, are different between policies. Insurance policies that are expressly linked together, but contain inconsistent definitions of who is an insured, help create much of the ambiguous analysis of Scott-Pontzer.
 {¶ 62} In this case, the integrated risk policy was offered by Federal, the same company offering coverage under the business auto policy. The integrated risk policy clearly referenced the existence of the business auto policy in Schedule C. These policies were linked together despite the fact that they were offered with differing definitions of "who is an insured" between them.
 {¶ 63} Absent what I see as a conflict between Holliman andScott-Pontzer, I would restrict application of the integrated risk policy to the defined insured, but would only do so where "who is an insured" is clearly and fully defined at the front of the policy. However, where definitions or coverage terms between linked policies are different and these differing definitions or coverage terms are not expressly made clear, an inherent ambiguity exists. If the contract language is clear and unambiguous, then its interpretation is a matter of law. HeritageMut. Ins. Co. v. Ricart Ford, Inc. (1995), 105 Ohio App.3d 261, 266. However, where language in an insurance policy is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. Id. "The test for determining whether language used in an insurance policy is ambiguous is whether that language is `* * * reasonably susceptible of more than one interpretation * * *.'" Santana v. Auto Owners Ins. Co. (1993), 91 Ohio App.3d 490,494; Ryberg v. Allstate Insurance Co., (July 12, 2001), Franklin App. No. 00AP-1243.
 {¶ 64} Since the insurer expressly linked both the business auto policy and the integrated risk policies together, I would find the decedent is an insured under the integrated risk policy in light of the apparent inconsistency on limiting language between Scott-Pontzer and Holliman.
 {¶ 65} Again we are reminded that "An insurer must draft its policy carefully, using language that is clear, unambiguous and consistent with the requirements of the law. King v. Nationwide Insurance Company
(1988), 35 Ohio St.3d 208, 212-213. Moreover, where the insurer fails in this regard by fashioning contractual provisions that are, "reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,664, 710 N.E.2d 1116." Grange Mutual Casualty Co. v. Rosko (2001),146 Ohio App.3d 698.
 {¶ 66} Only when clarity is restored to the drafting of insurance contracts can we expect clarity in the interpretation of contract language. As Judge Cupp stated in a concurring opinion in Finn v.Nationwide Agribusiness Ins. Co., Allen App. No. 1-02-80, 2003-Ohio-4233: "The misshapen reasoning unleashed by Scott-Pontzer
burrows deep. Its resulting course of twists and turns convolutes analysis and upends logic. But along its path we are required to tread."
 {¶ 67} On the issue of the general liability policy, while I agree that the policy coverage afforded by the exception does not apply to serve as proof of financial responsibility, I would find that the policy was not an automobile policy because the provision providing coverage for parked vehicles was simply "incidental" to the overall coverage of the insurance policy. This court has already addressed this issue in Ryan v.Dolin, Cuyahoga App. No. 81689, 2003-Ohio-2738, and McCullar v. BarthIndustries, Cuyahoga App. No. 82354, 2003-Ohio-4194.