OPINION
{¶ 1} Appellant and cross-appellee, The Ohio Municipal League Joint Self-Insurance Pool ("Municipal League"), appeals the January 14, 2003 judgment entry of the Trumbull County Court of Common Pleas granting summary judgment on the issue of coverage in favor of appellees and cross-appellants, Anne J. Sherock and James C. Sherock ("the Sherocks"). The Sherocks seek uninsured/underinsured ("UM/UIM") coverage under an insurance agreement between the Municipal League and the City of Niles. For the reasons that follow, we affirm the decision of the court below.
 {¶ 2} On September 13, 1999, Anne Sherock was involved in an automobile accident while in the course and scope of her employment as a part-time building inspector with the City of Niles. As a zoning inspector, Anne was required to use her own automobile in the performance of her duties. In return, the city provided Anne with five gallons of gasoline each week. At the time of the accident, the city of Niles was insured under a Participation Agreement with the Ohio Municipal League which included $1,000,000 of UM/UIM coverage. On September 13, 2001, the Sherocks filed a complaint for declaratory judgment and damages against the Municipal League claiming that the Sherocks were entitled to UM/UIM coverage under the Participation Agreement. Both parties moved for summary judgment.
 {¶ 3} Under the terms of the Participation Agreement, Anne had to be operating a hired and/or non-owned auto in order to be entitled to coverage. The Participation Agreement defines "Hired Auto" as follows:
Hired Auto means an Auto not owned by Participant which is used under contract in behalf of, or loaned to, the Participant provided such Auto is not owned by or registered in the name of:
a. An officer, director, elected or appointed official, or any participant of a board or commission of the participant; or
b. An employee or agent of the Participant who is granted an operating allowance of any sort for the use of such Auto.
 {¶ 4} The Participation Agreement defines a "Non-Owned Auto" as follows:
Non-Owned Auto means only those Autos you do not own, lease, hire or borrow which are used in connection with your business. This includes Autos owned by:
a. Your employees;
b. Volunteers; or
c. Members of their households;
But only while used in the scope of their employment.
 {¶ 5} The trial court granted summary judgment in favor of the Sherocks. In its decision, the trial court found that the Sherocks were not entitled to coverage under the "Hired Auto" provision of the Participation Agreement because Anne was "granted an operating allowance" of five gallons of gasoline a week. The court did find that the Sherocks were entitled to coverage under the "Non-Owned Auto" provision of the Participation Agreement. The Municipal League argued that the vehicle driven by Anne did not qualify as a "Non-Owned Auto." The definition of a "Non-Owned Auto" excludes vehicles that were leased, hired, or borrowed. According to the Municipal League, Anne's vehicle was hired because compensation was exchanged for its use, i.e. Anne received an operating allowance for the use of her vehicle. The trial court rejected this argument as follows: "The Court finds a peculiar situation in this case where the Defendant has argued positions that are completely contradictory. Under the first provision under `hired' auto the Defendant has argued that this is not in fact a hired automobile for the purposes of any coverage. Under the second aspect of a "Non-Owned" automobile Defendant has argued that the arrangement between the Plaintiff and the participant was a `hiring' of her motor vehicle. The Court finds that Defendant cannot have it both ways. As it applies to these specific circumstances herein the Court finds these two (2) provisions contradict each other. This contradiction certainly results in an ambiguity. This Court is required to hold this ambiguity as against the preparer of the instrument at issue."
 {¶ 6} Both parties have timely raised appeals. The Municipal League's sole assignment of error states: "The lower court erred to the prejudice of Appellant in denying Appellant's motion for summary judgment and granting Appellees' motion for summary judgment where no ambiguity existed within the Participation Agreement between Appellant and the City of Niles, and the undisputed facts establish that Appellee, Anne J. Sherock, was not driving a Covered Auto at the time of the accident."
 {¶ 7} The Sherocks sole assignment of error states: "The trial court erred to the prejudice of the plaintiffs-appellees/cross-appellants, in finding that Mrs. Sherock was not driving a `hired auto' at the time of the subject collision."
 {¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 369-370, 1998-Ohio-389 (citation omitted). A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v.Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. An appellate court also applies the de novo standard when it reviews a trial court's interpretation of a contract. Clem v. Steiner, 11th Dist. No. 2002-P-0056, 2003-Ohio-4865, at ¶ 15. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Scioto Cty. Commrs.
(1993), 87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 9} Where the terms of a contract are clear and unambiguous, its interpretation is a matter of law. NationwideMut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108,1995-Ohio-214, quoting Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Serv. Inc.v. Nationwide Ins. Cos. (1999), 86 Ohio St.3d 270, 273,714 N.E.2d 898, citing Employers' Liab. Assur. Corp. v. Roehm
(1919), 99 Ohio St.3d 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Kellyv. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289,509 N.E.2d 411, paragraph one of the syllabus. We look at the plain and ordinary meaning of the language used in the policy unlessanother meaning is clearly apparent from the contents of thepolicy. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. GulfIns. Co. v. Burns Motors, Inc. (Tex. 2000), 22 S.W.3d 417, 423."Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, at ¶ 11 (emphasis added).
 {¶ 10} The Municipal League argues that the word "hire," as used in the definition of a "Non-Owned Auto," has a common and ordinary meaning — "to get the use of a thing for payment." Webster's New Universal Unabridged Dictionary (2d ed. 1983);Westfield Ins. Co. v. Nationwide Mut. Ins. Co. (1993),99 Ohio App.3d 114, 119 ("hire" generally means "to get the services of a person or the use of a thing in return for payment") (citation omitted). According to the Municipal League, the trial court erred by finding this term ambiguous and construing it against the Municipal League. Construing the word "hire" with its commonly accepted meaning, the Municipal League argues that the City of Niles obtained the use of Anne's vehicle in return for payment of five gallons of gasoline. Since Anne's vehicle was hired by the city, it cannot qualify as a "Non-Owned Auto" for the purposes of UM/UIM coverage. Moreover, the Municipal League argues that the definitions of "Hired Auto" and "Non-Owned Auto" in the Participation Agreement are consistent with each other because both provisions deny coverage "where compensation is provided for the use of a vehicle in the performance of work for the City."
 {¶ 11} We agree with the Municipal League that the word "hire" is not ambiguous. We do not, however, ascribe to it the common, ordinary meaning advanced by the Municipal League. We hold that the word "hire," as used in the definition of a "Non-Owned Auto," has the same meaning as it does in the definition of a "Hired Auto," i.e. an auto used on behalf of the city under contract but not owned by an employee of the city receiving any sort of operating allowance. If the vehicle operated by Anne is not, by definition, a "Hired Auto" under the Participation Agreement, neither is it a vehicle that the city "hires" for the purposes of defining a "Non-Owned Auto." A "Non-Owned Auto" under the Participation Agreement is basically a vehicle used in connection with the city's business that is not hired. Applying the Participation Agreement's definition of a hired auto to Anne's vehicle, we conclude that her vehicle qualifies as a "Non-Owned Auto" for the purposes of UM/UIM coverage. Accordingly, the Sherocks are entitled to coverage.
 {¶ 12} Contrary to the finding of the trial court, we do not find that there is any conflict between the provisions of the Participation Agreement defining a "Hired Auto" and a "Non-Owned Auto." Rather, we find the intent behind these two provisions to be complimentary. The definition of a "Hired Auto" broadly excludes vehicles that are hired, if they are hired from employees of the city. The definition of a "Non-Owned Auto" includes this broad category of vehicles excluded from the definition of "Hired Autos." The intent behind the drafting of these provisions is clear. If the city only wanted to insure hired autos owned by non-employees, it would only have purchased coverage for "Hired Autos." By also purchasing coverage for "Non-Owned Autos," the parties clearly intended coverage for all hired vehicles, regardless of whether they are owned by city employees. Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, at paragraph one of the syllabus ("The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.").
 {¶ 13} The ambiguity found by the trial court only exists if two different definitions of the term "hire" are applied to the interpretation of the Participation Agreement. According to the Municipal League and the trial court, "hire" has a precise definition in the context of the "Hired Auto" provision, but a general meaning in the context of the "Non-Owned Auto" provision. Such an interpretation, however, is unnecessary and improper. Where a contract gives precise meaning to a particular term, the term should be construed consistently as having that meaning throughout the contract, absent some evidence of intent to the contrary. Cf. Uzhca v. Derham, 2nd Dist. No. 19106, 2002 Ohio App. LEXIS 1538, at *11, 2002-Ohio-1814 ("We believe that a consistent interpretation of the word [defined within the policy] is preferable to ascribing it different meanings depending on where in the policy it appears."). Moreover, a trial court exceeds its authority when it undertakes to construe language that is unambiguous. The Ohio Supreme Court has stated that "the most critical rule [of interpretation] is that which stops this court from rewriting the contract when the intent of the parties is evident, i.e., if the language of the policy's provisions is clear and unambiguous, this court may not `resort to construction of that language.'" Hybud Equip. Corp. v. Sphere Drake Ins. Co.,Ltd. (1992), 64 Ohio St.3d 657, 665, quoting Karabin v. StateAuto Mut. Ins. Co. (1984), 10 Ohio St.3d 163, 167; cf. Blosserv. Enderlin (1925), 113 Ohio St. 121, paragraph one of the syllabus ("The agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof.").
 {¶ 14} Since the term "hire" is defined within the Participation Agreement, we hold that this term is not ambiguous and it was unnecessary for the trial court to construe the Participation Agreement.[1] Applying the term "hire" as defined within the participation agreement, the Sherocks are entitled to coverage under the "Non-Owned Auto" provision of the Participation Agreement. On these grounds, we overrule the Municipal League's sole assignment of error.
 {¶ 15} We now turn to the argument raised by the Sherocks on cross-appeal. The Sherocks assert that the phrase "operating allowance" as used in the definition of a "Hired Auto" is ambiguous because it is reasonably susceptible to more than one interpretation. "Operating allowance" is not defined in the Participation Agreement. In support of their argument, the Sherocks submitted affidavit and deposition testimony of various fact witnesses in this case, as well as the testimony of their own "insurance expert," that the phrase "operating allowance" is susceptible to more than one interpretation.
 {¶ 16} It is "well established that words used in a contract of insurance are to be given their natural and usual meaning unless otherwise defined in the contract." Garlick v. McFarland
(1953), 159 Ohio St. 539, 545. As noted above, a court is without authority to construe the terms of a contract when their meaning is unambiguous. Alexander, 53 Ohio St.2d at 246 (citations omitted). Where a term is ambiguous, parol evidence is admissible to interpret, but not to contradict, the express language of the contract. Ohio Historical Soc. v. Gen. Maintenance Eng. Co.
(1989), 65 Ohio App.3d 139, 146 (citations omitted). "[I]f such an ambiguity is alleged, it must arise from the language of the contract itself and, therefore, courts will not admit parol testimony to construe an ambiguity forced into the contract to strain the apparent meaning of the language." Fireman's FundIns. Co. v. Mitchell-Peterson, Inc. (1989), 63 Ohio App.3d 319,328, citing Cincinnati v. Gas Light Coke Co. (1895),53 Ohio St. 278, 286-287; see, also, Heritage Mut. Ins. Co. v. RicartFord, Inc. (1995), 105 Ohio App.3d 261, 268 ("[f]inding the contract clear and unambiguous, we therefore conclude that there can be no introduction of parol evidence").
 {¶ 17} We find nothing ambiguous about the phrase "operating allowance." A term is not ambiguous merely because the policy does not define it. Guman Bros. Farm, 73 Ohio St.3d at 108. Read in context, the Participation Agreement excludes from the definition of a "Hired Auto" vehicles owned by an employee who receives "an operating allowance of any sort." The phrase clearly refers to employees who receive any sort of compensation or remuneration for the use of their vehicles on behalf of the city's business. The precise meaning of the phrase will vary as the possible types of compensation that an employee may receive varies. For example, an operating allowance could entail compensation based on mileage, travel expenses, or, as in this case, a fixed allowance of gasoline. The fact that the phrase can assume a variety of particular meanings does not mean that the phrase is ambiguous.
 {¶ 18} Since we do not find "operating allowance" to be ambiguous, the parol evidence submitted by the Sherocks has no relevance. The Sherocks' cross-assignment of error is overruled.
 {¶ 19} For the foregoing reasons, all assignments of error are overruled and the decision of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
Christley and Rice, JJ., concur.
[1] After finding ambiguity, the trial court held that it was required to construe the policy against the party drafting the policy. While this is generally true, the Ohio Supreme Court has recently cautioned that where, as here, "the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party."Galatis, 2003-Ohio-5849, at ¶ 14, quoting Cook v. Kozell
(1964), 176 Ohio St. 332, 336.